2011 ME 43

**Sandra L. JUSSEAUME**

v.

**James D. DUCATT.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 1, 2010.
Decided: April 7, 2011.

request for a protection from abuse order based on a finding that James D. Ducatt's conduct did not meet the definition of abuse. *See* 19–A M.R.S. § 4002(1)(B) (2010).[1] Jusseaume contends that the court committed obvious error by failing to afford her the opportunity to cross-examine Ducatt and that the court misinterpreted the protection from abuse statute. We agree with each of Jusseaume's contentions, and we vacate the judgment.

## I. BACKGROUND

[¶ 2] Jusseaume was married to Ducatt on December 31, 1998, and they remained married for approximately eight years. They lived in Maine, Massachusetts, and Oregon during the marriage and had two sons, one born in 1999 and the other in 2000. In 2006, Ducatt was convicted of assault and other offenses because he attacked Jusseaume when they were living in Oregon. He served half of a ninety-day sentence and was ordered not to have contact with Jusseaume for three years pursuant to conditions of probation.

Aurora Smaldone, Esq., Pine Tree Legal Assistance, Inc., Portland, ME, for Sandra L. Jusseaume.

James D. Ducatt did not file a brief.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] Sandra L. Jusseaume appeals from a judgment entered in the District Court (West Bath, *Tucker, J.*) denying her

[¶ 3] Jusseaume moved to Maine and obtained a divorce judgment in Oregon in July 2006. Pursuant to the divorce judgment, Jusseaume had sole parental rights and responsibilities for the two boys, and provided their primary residence. Ducatt was allowed to speak with the boys on the telephone after the no-contact probation conditions expired. He was also permitted to visit with the children once every quarter-year in a professionally supervised set-

---

1. In relevant part, the statute provides:

   As used in this chapter, unless the context otherwise indicates, the following terms have the following meanings.

   **1. Abuse.** "Abuse" means the occurrence of the following acts between family or household members or dating partners or by a family or household member or dating partner upon a minor child of a family or household member or dating partner:

   . . . .

   **B.** *Attempting to place or placing another in fear of bodily injury through any course of conduct, including, but not limited to, threatening, harassing or tormenting behavior.*

   19–A M.R.S. § 4002 (2010) (emphasis added).

ting.[2]  Jusseaume remarried after she moved to Maine, and the family moved into a house in Topsham.

[¶ 4]  When Ducatt called to speak with the boys, Jusseaume listened in.  On July 24, 2009, Ducatt called when Jusseaume was not at home.  When the boys got off the phone, they were upset and asked their stepfather why Ducatt had described their house to them and asked where their rooms were.  Jusseaume's husband called her on her cell phone, and she returned from her shopping trip immediately without making her purchases.

[¶ 5]  Jusseaume filed a complaint for protection from harassment on July 27, 2009.  At the hearing on the complaint on September 18, the court (*J.D. Kennedy, J.*) denied Jusseaume a protection from harassment order because her allegations failed to satisfy the statutory requirements.  *See* 5 M.R.S. § 4651(2) (2010) (defining harassment to require three or more acts unless the conduct violated specified laws).  On the same day, Jusseaume filed a complaint for protection from abuse pursuant to 19–A M.R.S. § 4003 (2010), and the court entered a temporary order of protection.  The order was served on Ducatt in West Bath on January 28, 2010, and the court (*Tucker, J.*) held a trial on March 26, 2010.[3]

[¶ 6]  At the trial, Jusseaume was represented by counsel.  She testified that, when she got home from the store on July 24, 2009, the boys told her that Ducatt had asked them about the layout of the house, identified where pictures were located in the house, and asked about a broken chan-

delier.[4]  Jusseaume also testified that Ducatt had no reason to know her address and that she was afraid that he was staking out her house to determine when she was alone.  According to Jusseaume, she and her husband moved with their children to a new address and abandoned an earlier plan to purchase the Topsham residence because Jusseaume was afraid for her life and believed that Ducatt would do something to her if he found her alone.

[¶ 7]  Ducatt, who was not represented by counsel, personally cross-examined Jusseaume.  Jusseaume's husband then testified, and Ducatt cross-examined him.  Jusseaume rested her case.

[¶ 8]  Ducatt then offered his own testimony that he had told his sons that he was using Google Earth to see all sides of the house where they lived and to zoom in on features.  He also testified that the boys had described other features to him, such as the broken chandelier, before the conversation of July 24, 2009.  He denied that he had paid for a Google service that would provide live images of the house, and he denied that he had identified any pictures on the walls in the house.  Ducatt did not state whether, or to what extent, he had been physically at or near Jusseaume's home on the day in question.

[¶ 9]  While Ducatt was offering his testimony, the court interrupted him and stated, "Okay. I've heard enough."  Although the court had allowed Ducatt to personally cross-examine both Jusseaume and her husband, the court did not provide an opportunity for Jusseaume's attorney to cross-examine Ducatt or for Jusseaume to

---

2.  There is no evidence in the record that the divorce judgment or any other court order prohibited Ducatt from being near Jusseaume after Ducatt's probationary period expired.  Neither the divorce judgment nor any other judgments or orders from the Oregon courts were offered or admitted in evidence.

3.  It is not clear from this record why the final hearing occurred two months after service on Ducatt.

4.  Jusseaume offered this testimony without objection.

introduce evidence to rebut Ducatt's testimony. Based on the record before it, the court found that the evidence was insufficient for it to issue a protection from abuse order.

[¶ 10] Upon Jusseaume's motion, *see* M.R. Civ. P. 52(a), the court then entered written findings of fact in the matter, including the following findings:

> There is insufficient persuasive evidence that the defendant *intended*, by his questions to the children, to place the children or their mother, the plaintiff, in fear of bodily injury. The record is simply not clear enough about the precise nature of the conversations and the questions and comments made.
>
> The court acknowledges that threats can be made in subtle or coded ways, for example under certain circumstances by a telephone comment as simple as, "I know where you live." However, in this case the nature of the conversation cannot be satisfactorily . . . reconstructed to persuasively establish a course of conduct that could be expected to threaten bodily injury. The evidence of the defendant's statements was second or third hand, in the context of an emotionally charged relationship.

(Emphasis added.) Jusseaume appealed from the judgment.

## II. DISCUSSION

### A. The Opportunity for Cross–Examination

[¶ 11] Because Jusseaume did not alert the court that it had neglected to afford her the opportunity to present questions to Ducatt, we review this unpreserved issue for obvious error. *See In re Anthony R.*, 2010 ME 4, ¶¶ 8–9, 987 A.2d 532, 534. Error is obvious if it is "a seriously prejudicial error tending to produce manifest injustice." *Tibbetts v.*

*Dairyland Ins. Co.*, 2010 ME 61, ¶ 10, 999 A.2d 930, 933 (quotation marks omitted).

[¶ 12] "When significant rights are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial factfinder." *GENUJO LOK Beteiligungs GmbH v. Zorn*, 2008 ME 50, ¶ 18, 943 A.2d 573, 579. Because due process guarantees the right to respond to evidence, an adjudicator must afford a party the opportunity to rebut or challenge evidence offered against him or her. *See In re Dustin C.*, 2008 ME 89, ¶ 7, 952 A.2d 993, 995 (holding that a mother in a child protection proceeding was afforded due process when she had notice of a hearing, was represented by counsel, and was given the opportunity to rebut evidence); *Balian v. Bd. of Licensure in Med.*, 1999 ME 8, ¶¶ 8, 12, 722 A.2d 364, 366, 367 (upholding the right of a licensee to have notice of a standard of professional conduct so that the licensee would have an opportunity to rebut the evidence against him).

[¶ 13] A party may challenge opposing evidence by exercising the right to cross-examine adverse witnesses, an opportunity that "is constitutionally required in 'almost every setting where important decisions turn on questions of fact.' " *In re Maine Clean Fuels, Inc.*, 310 A.2d 736, 746 (Me.1973) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); *see* U.S. Const. amend. XIV (Due Process Clause), § 1; Me. Const. art. 1, § 6–A (Due Process Clause). We have long recognized the fundamental importance, in civil trials, of testing the reliability of testimony through examination in open court. *See In re Will of Paradis*, 147 Me. 347, 363, 87 A.2d 512, 520 (1952) ("All the evidence presented in litigated cases must be sworn testimony, and must be so

presented as to give the parties to whom it is adverse the opportunity for cross-examination."); *see also* M.R. Civ. P. 43(i) (providing for both the direct examination and cross-examination of witnesses).[5]

[¶ 14] Although the court allowed Ducatt to cross-examine Jusseaume, it did not offer Jusseaume the same opportunity to cross-examine Ducatt. Nor did the court offer Jusseaume the opportunity to present testimony or evidence to rebut Ducatt's testimony, as an alternative to cross-examination. Jusseaume was entitled to have the opportunity to challenge Ducatt's testimony through such cross-examination or responsive testimony. Because she did not have that opportunity, Ducatt was not pressed to explain how he became aware of Jusseaume's address or whether he had been physically present near her house. It is possible that, if Jusseaume had been allowed to cross-examine Ducatt or offer evidence in rebuttal, the court would have learned of additional or different conduct that might have affected its findings or credibility determinations.

■ [¶ 15] The court's decision to enter judgment without first affording Jusseaume the opportunity to present questions to Ducatt or offer rebuttal evidence was not a harmless error.[6] *See* M.R. Civ. P. 61. Rather, this error satisfied the obvious error standard because it seriously prejudiced Jusseaume's case and was manifestly unjust. *See Tibbetts*, 2010 ME 61, ¶ 10, 999 A.2d at 933. Accordingly, we must vacate the judgment and remand the matter for a new hearing.

---

5. If one party's cross-examination of the other could result in harassment, intimidation, or threats, the court may exercise its discretion to constrain that cross-examination. *See* M.R. Evid. 611(a)(3) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence on direct and cross-examination so as to ... protect witnesses from harassment or undue embarrassment."). "[T]rial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (reviewing a challenge based on the Confrontation Clause).

In protection from abuse cases involving self-represented parties, the cross-examination of one party directly and personally by the other may perpetuate or allow intimidation or harassment, or may compromise a party's safety. In such circumstances, a court must provide the opportunity to rebut or challenge the other party's evidence, but it may take reasonable measures to keep parties safe and prevent intimidation or harassment. *See id.;* M.R. Evid. 611(a)(3); *see also In re Adoption of J.S.P.L.*, 532 N.W.2d 653, 662–63 (N.D. 1995) (holding that a father convicted of murdering his wife in front of their children had no due process right to personally cross-examine witnesses in the children's adoption hearing); *In re B.G.*, 225 Ga.App. 492, 484 S.E.2d 293, 295 (1997) (holding that a court may take steps to minimize fear in a child witness if the court finds that the child would be substantially traumatized in a way that compels the limitation of confrontation rights). There is no allegation here, however, that allowing Jusseaume to cross-examine Ducatt would have created any risk of intimidation or harassment to Ducatt.

6. Because parties in adjudicatory proceedings have due process rights to introduce evidence, to present witnesses, and to respond to claims and evidence, *GENUJO LOK Beteiligungs GmbH v. Zorn*, 2008 ME 50, ¶ 18, 943 A.2d 573, 579, we have also safeguarded the right of parties to present rebuttal evidence. Rebuttal evidence is evidence that "contravenes, antagonizes, confutes, or controls the inference sought to be drawn by new facts introduced by the adverse party at the next previous stage." *Payson v. Bombardier, Ltd.*, 435 A.2d 411, 413 (Me.1981) (quotation marks omitted). "[I]t is beyond the discretion of a trial judge to exclude genuine rebuttal testimony ...." *Rich v. Fuller*, 666 A.2d 71, 74 (Me.1995); *see also* M.R. Civ. P. 43(j) (authorizing a party who has rested to later offer evidence in rebuttal).

B. Interpretation of the Protection from Abuse Statute

[¶ 16] Because the court must apply the protection from abuse statute on remand, we also address the issue of statutory interpretation that Jusseaume has raised on appeal. We review a court's interpretation of a statute de novo. *See Hatch v. Anderson*, 2010 ME 94, ¶ 11, 4 A.3d 904, 907. In interpreting a statute, we look first to the plain meaning expressed in the statute's language to discern the Legislature's intent. *See id.*

[¶ 17] Maine's protection from abuse statute provides that a court may enter an order of protection "after a hearing and upon finding that the defendant has committed the alleged abuse." 19–A M.R.S. § 4007(1) (2010). The Legislature has included in the statutory definition of abuse, "[a]ttempting to place or placing another in fear of bodily injury through any course of conduct, including, but not limited to, threatening, harassing or tormenting behavior." 19–A M.R.S. § 4002(1)(B).[7] We have held, in interpreting this definition of abuse, that if the person seeking the protective order is in actual fear of bodily injury, that fear must be reasonable, considering all of the circumstances. *See Smith v. Hawthorne*, 2002 ME 149, ¶¶ 17–18, 804 A.2d 1133, 1139.

[¶ 18] Thus, pursuant to section 4002(1)(B), a court may order protection from abuse if the defendant either (1) "[a]ttempt[ed] to place . . . another in fear of bodily injury through [a] course of conduct," or (2) actually "plac[ed] another in fear of bodily injury" through that course of conduct, if the fear was reasonable. *Id.* The statute therefore authorizes a court to issue a protective order if a person, with or without the intent to induce fear, engaged in conduct that actually "plac[ed] another in [reasonable] fear of bodily injury." *Id.*; *Smith*, 2002 ME 149, ¶¶ 17–18, 804 A.2d at 1139. A court need not determine whether the defendant *intended* to frighten another person if (1) the defendant's actions *actually placed* the person in fear, (2) the person was in fear of *bodily injury*, and (3) the person's fear was *reasonable*. *See* 19–A M.R.S. § 4002(1)(B); *Smith*, 2002 ME 149, ¶¶ 17–18, 804 A.2d at 1139.

[¶ 19] Ducatt admittedly learned Jusseaume's new address and made their sons aware that he knew where they lived. Jusseaume alleged and testified that, as a result of this conduct, she was afraid that Ducatt was watching the house and would hurt her when he found her alone. This conduct occurred after Ducatt had assaulted Jusseaume in Oregon and had served a jail sentence as a result of his conduct.

[¶ 20] Although the court did consider whether Ducatt intentionally attempted to place Jusseaume in fear of bodily injury through his course of conduct, and found that there was insufficient evidence of intent, the court did not determine whether Ducatt *actually placed* Jusseaume in reasonable fear of bodily injury through his course of conduct. *See* 19–A M.R.S. § 4002(1)(B); *Smith*, 2002 ME 149, ¶¶ 17–18, 804 A.2d at 1139. Because there are two possible means of establishing abuse pursuant to section 4002(1)(B), the court must consider on remand whether the evidence establishes abuse through either of these means.

[¶ 21] We therefore remand the matter for the court to conduct a new trial during which both parties shall have the opportunity to offer their own evidence and challenge adverse evidence. The court shall

---

7. This definition applies when such acts occur "between family or household members," a term that is defined to include former spouses. 19–A M.R.S. § 4002(1), (4) (2010).

then reach its findings and apply the statute as we have interpreted it today.

The entry is:

Judgment vacated. Remanded for a new trial.