2011 ME 86

**Eli A. BLACKHOUSE**

v.

**Jane DOE.**[1]

Supreme Judicial Court of Maine.

Submitted on Briefs: April 27, 2011.

Decided: Aug. 4, 2011.

1. Due to the harsh nature of Blackhouse's as yet unadjudicated allegations against the defendant, we are electing to use a pseudonym for the defendant.

N. Laine Astbury, Student Atty., E. James Burke, Supervising Atty., Portland, ME, for Eli A. Blackhouse.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Dissent: ALEXANDER, J.

GORMAN, J.

[¶ 1]   Eli A. Blackhouse appeals from a judgment of the District Court (Augusta, *Soucy, J.*) dismissing his complaint for protection from abuse, 19–A M.R.S. § 4003 (2010), for his failure to appear at the final hearing.   On appeal, Blackhouse contends that the court erred by dismissing his complaint without first considering his request for reasonable accommodation of his claimed disability.   We agree and vacate the dismissal, remanding to the court for action on Blackhouse's request.

## I.  BACKGROUND

[¶ 2]   Blackhouse and Jane Doe are both residents of an apartment building in Gardiner.   On May 6, 2010, Blackhouse filed a complaint for protection from abuse against Doe, alleging that he is a victim of Doe's stalking, and describing her "stalking-like behaviors," *inter alia*, as "repeated appearances on property she has no right to occupy," "directly [harassing him] on a number of occasions," "repeatedly assailing him with abusive dialog, including language and taunts acknowledging that she actively participates in [his] confinement," "blocking the entrance of the front doorway so that he cannot exit the building without confronting her," "intimidating him," and threatening to send someone to "enact an undisclosed form of retaliation against [him]."   Blackhouse also asserted that Doe's actions have contributed to the deterioration of his health.

[¶ 3]   In terms of relief, Blackhouse sought an order prohibiting Doe from having any contact with him or "any minor children in [his] charge," and from repeatedly, and without reasonable cause, being at or in the vicinity of his residence, school, business, or place of employment.

He also asked for relief that is not available in this type of action.[2]

[¶ 4] With his complaint, Blackhouse submitted a request for reasonable accommodation, stating that he was disabled and unable to be physically present in court. In his request, Blackhouse recited that he suffers from "an advanced form of combat-level post-traumatic stress disorder ('PTSD') specific to having survived an abduction and medical torture." He also described a condition involving "an easily-triggered startle response," and requested "absolutely no contact whatsoever with uniformed police officers." Blackhouse asked the court to accommodate his condition by allowing him to proceed on his complaint without having to enter the physical premises of the court.

[¶ 5] After review of Blackhouse's complaint, the court (*Mullen, J.*) denied his request for an ex parte temporary order of protection from abuse. It is not clear from the record whether the court was aware of Blackhouse's request for reasonable accommodation at the time of that review.

[¶ 6] A final hearing on Blackhouse's complaint for protection from abuse was scheduled for May 24, 2010. The clerk's office mailed notice of the final hearing to Blackhouse. Blackhouse failed to appear for the hearing, and the court (*Soucy, J.*) dismissed his complaint. There is no indication that Blackhouse's request for reasonable accommodation was called to the court's attention or that the court otherwise reviewed it before dismissing the complaint.

[¶ 7] Blackhouse subsequently brought this appeal, arguing that the court should have considered his request for reasonable accommodation, and that, by failing to do so, the court violated article I, section 6–A of the Maine Constitution; the Maine Human Rights Act, 5 M.R.S. §§ 4551–4634 (2010); and the Americans with Disabilities Act, 42 U.S.C.S. §§ 12101–12213 (LexisNexis 2009).

## II. DISCUSSION

[¶ 8] An individual with a disability may request special accommodations to ensure an equal opportunity to participate in a court proceeding. *See* Me. Judicial Branch, *Accommodation Request Procedure*, http://www.courts.state.me.us/court_info/ada/accommodation.html ("Accommodations may be initiated by court personnel or in response to a request from a person needing an accommodation."); *see also* 42 U.S.C.S. § 12101(a)(7); ("[T]he Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity [and] full participation...."); 5 M.R.S. § 4591; *Tennessee v. Lane*, 541 U.S. 509, 532, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) ("This duty to accommodate is perfectly consistent with the well-established due process principle that, within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard in its courts." (quotation marks omitted)); Me. Judicial Branch, *Policy on Access for People with Disabilities*, http://www.courts.state.me.us/court_info/ada/policy.html.

[¶ 9] "Accommodations are variations in the way things are normally done to enable individuals with disabilities to have an equal opportunity to participate in court activities." Me. Judicial Branch, *Accommodation Request Procedure*. Accommodations may include the provision of interpreters, microphones, or sound amplifiers or may involve a modification in court pro-

---

**2.** For example, Blackhouse requested that he be granted "the right to initiate eviction pro-ceedings" against occupants of the apartment building.

cedures, e.g., delaying a court event until later in the day. *See id.* ("The need for an accommodation shall be taken into account in scheduling.... In some circumstances it will be necessary to move or reschedule a hearing to provide a needed accommodation."); *see also* Me. Judicial Branch, *Policy on Access for People with Disabilities.*

■ [¶ 10] An individual may submit a request for accommodation to "the clerk of court where the proceeding will take place or to the assigned judge, case management officer or mediator." Me. Judicial Branch, *Accommodation Request Procedure.* When, as here, the request for accommodation is one that may impact the way in which a hearing or trial will be conducted, a judicial officer should consider the request.

■ [¶ 11] The court may order reasonable accommodations and auxiliary aids and services "to ensure effective communication and participation of individuals with disabilities in the court system." *Id.* For example, courts are authorized to allow witnesses to present testimony by telephone. *See* M.R. Civ. P. 43(a) (stating that a court may permit the presentation of testimony in court "by contemporaneous transmission from a different location" on its own motion or for good cause shown); *cf.* M.R. Civ. P. 7(g) (approving the use of telephone or video conference calls for conferences and non-testimonial hearings). Alternatively, if the court determined that allowing telephonic testimony in a particular case or type of case would fundamentally alter the nature of the hearing, the court could consider a different accommodation, such as scheduling the hearing at a time when contact with other members of the public would be minimized. *See Lane,* 541 U.S. at 532, 124 S.Ct. 1978 ("[Title II of the Americans with Disabilities Act] requires only 'reasonable modifications' that

would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service."); *see also Suzman v. Comm'r, Dep't of Health & Human Servs.,* 2005 ME 80, ¶¶ 9–10, 876 A.2d 29, 32–33; *Me. Human Rights Comm'n v. City of S. Portland,* 508 A.2d 948, 955 (Me.1986).

■ [¶ 12] If, however, after considering a request for accommodation, the judicial officer denies the request, the officer must provide a written explanation to the parties and the State Court Administrator giving the reason for the denial, accompanied by a copy of the Judicial Branch grievance procedure. *See, e.g.,* Me. Judicial Branch, *Accommodation Request Procedure; see also* Me. Judicial Branch, *Grievance Procedure,* http://www.courts.state.me.us/court_info/ada/grievance.html.

■ [¶ 13] In this case, the record contains no indication that any judicial officer even considered Blackhouse's request for accommodation. Despite this gap in the appropriate process, the dissent suggests that we should nonetheless affirm the dismissal of Blackhouse's complaint because it is not plausible on its face, as his allegations against Doe are bizarre, vexatious, and frivolous.

[¶ 14] Blackhouse filed a complaint for protection from abuse in accordance with 19–A M.R.S. § 4005(1) (2010), alleging a course of conduct by Doe that, if proved, could allow a court to grant Blackhouse a protection from abuse order. *See* 19–A M.R.S. §§ 4006(1), 4007(1) (2010); *see also* 17–A M.R.S. § 210–A(1)(A), (2)(A) (2010). Although, as the dissent notes, Doe is eighty-six years old, neither her age nor Blackhouse's disability allows us to prejudge the veracity of Blackhouse's allega-

tions.[3] *See* 19–A M.R.S. § 4006(1) ("Within 21 days of the filing of a complaint, a hearing must be held at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence."); *see also Connolly v. Connolly*, 2006 ME 17, ¶ 7, 892 A.2d 465, 467 (holding that a hearing is required in all protection from abuse cases "except those in which the defendant agrees to a finding of abuse, or the plaintiff agrees to an order without a finding of abuse").

[¶ 15] Blackhouse's request for accommodation asserts that he suffers from PTSD, a severe anxiety disorder. Persons suffering from mental illness, including PTSD, may have significantly impaired thought processes that, in turn, interfere with one or more major life activities. A mental illness may also prevent an individual from accurately perceiving reality and, in this case, it may well turn out that Blackhouse's allegations against Doe cannot be supported by evidence. His asserted diagnosis of PTSD, however, does not make Blackhouse immune from abuse, harassment, or stalking. Unfortunately, the converse is often true.

[¶ 16] In this case, Blackhouse's request that he be permitted to litigate his complaint in a way that would accommodate his claimed disabilities was never considered by the court. Therefore, we vacate the dismissal of his complaint. Whether Blackhouse is entitled to a protection from abuse order against Doe is an issue that should be decided only after a judge has considered Blackhouse's request for reasonable accommodation, the court has notified Blackhouse and Doe of its decision on Blackhouse's request, and both parties have been notified of the date of the hearing on Blackhouse's complaint. *See Lane*, 541 U.S. at 531, 124 S.Ct. 1978

("Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility.").

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

ALEXANDER, J., dissenting.

[¶ 17] I respectfully dissent. In his protection from abuse filing, Eli Blackhouse makes bizarre, vexatious, and facially incredible claims against many individuals in his community. A particular focus of his allegations is a vulnerable and likely destitute eighty-six-year-old woman against whom Blackhouse seeks to invoke our judicial processes to evict her from her home and seize some or all of her money. As a reasonable accommodation for his unsupported claim of a disability, Blackhouse asks that the Court deprive the targets of his allegations of due process of law by accrediting his claims, vacating the trial court's dismissal of his complaint, and ordering that the action proceed without his being present to be confronted by those against whom he seeks relief.

[¶ 18] This Court holds that Blackhouse's request for reasonable accommodation of his alleged disability requires that we accept as true all allegations, no matter how bizarre, and gives a plaintiff license to maintain a bizarre, vexatious, or incredible claim that a trial court would— as it did here—dismiss were it not brought by one claiming a disability. I do not agree that our laws providing protections for individuals with disabilities go so far as to require courts to accredit claims

---

**3.** The dissent's suggestion that Blackhouse's request for relief is overblown is also not a proper basis for determining that his complaint has no merit.

brought by persons claiming a disability, when those same claims would be dismissed, and perhaps sanctions imposed, if asserted by an individual not claiming a disability. That is not equal treatment; it is preferential treatment. And such preferential treatment poses significant risk that, in the name of reasonable accommodation, court processes may be abused to the detriment of vulnerable individuals who are the targets of bizarre, vexatious, or incredible claims that a court accredits and allows to proceed.

[¶ 19] The dilemma presented by this Court's holding is well illustrated by the facts of this appeal. The District Court, perhaps with knowledge of Blackhouse's history, saw this complaint for what it is— a frivolous, vexatious, and implausible action by a thirty-nine-year-old man seeking to exclude an eighty-six-year-old woman from her home and force her to pay him money. To support his efforts, Blackhouse asserted many bizarre allegations against his neighbor, his landlord, other tenants, and people in the community. With no documentation except for his own words, he then claimed a disability and demanded, as an accommodation, that he be permitted to avoid being confronted in court by the targets of his accusations. The District Court, seeing the bizarre and incredible allegations in Blackhouse's complaint at the temporary order stage, could have properly dismissed it without reaching Blackhouse's request for accommodation.

[¶ 20] Let us take a closer look at the facts and history behind this case. Blackhouse is a resident of a twelve-unit apartment building in Gardiner. The defendant, Jane Doe, is a resident of another apartment in the same building. Blackhouse's pleadings indicate that he has grievances against many individuals arising from his residence at that apartment building.

[¶ 21] In a previous action, Blackhouse had filed a protection from harassment claim, see 5 M.R.S. §§ 4651–4660–A (2010), against the landlord of that building, see Blackhouse v. Connelly, Mem–10–102 (Aug. 12, 2010). In that action, Blackhouse asserted:

Plaintiff Eli Blackhouse is a housing fraud victim who can neither remain safely within nor relocate outside of the premises of 235 Water Street—where he currently dwells—because Ms. Connelly and her property management company, d/b/a "TLC Properties," require him to pay an amount of rent that is illegal according to Federal Law. Fully disabled with post-traumatic stress disorder requiring careful management in most public settings, Mr. Blackhouse is presently imperiled by: a) conditions created by the extortion of excessive rent, which violate the apartment's warranty of habitability (14 MRSA § 6021); and, b) his inability to relocate outside of the thrall of Ms. Connelly, who acquired the building from a previous owner after said owner had extorted over $8000 from his monthly SSDI disbursement check (in a manner both identical to and enabling the continuation of the extortion that would—subsequent to the illegal sale—then go on to be conducted by the Defendant).

[¶ 22] In documents filed in support of his prior request for an order of protection from harassment, Blackhouse had contended that he was the victim of a widespread criminal conspiracy that included, among others, the Augusta Housing Authority, who had caused his relocation from Augusta to Gardiner, and the Maine Medical Center in Portland. Blackhouse also asserted that he was a witness for the "FBI"

investigating various criminal conspiracies within the State.

[¶ 23] The District Court (*Westcott, J.*) dismissed Blackhouse's prior action, and, on appeal, we affirmed the dismissal. *Blackhouse,* Mem–10–102.

[¶ 24] On May 6, 2010, the Augusta District Court received from Blackhouse an envelope marked "Urgent/Confidential" containing his protection from abuse complaint against Doe that initiated this action. The complaint indicated that Doe was a resident of a different unit in the same building. It also asserted that Doe "is likely tied in to the racketeering/abetment activity being conducted by" a Gardiner police officer and another individual whose name was indicated.

[¶ 25] The complaint further stated that Blackhouse based his complaint on "stalking-like behaviors including repeated appearances on property she has no right to occupy; has screamed at Plaintiff—a wrongful confinement victim and disabled abuse survivor—on multiple occasions, Harassment." A document attached to the complaint referenced the *Blackhouse v. Connelly* matter and asserted that Blackhouse had been victimized by "a variety of collaborators" with the victimization including "wrongful confinement," terrorizing, sexual assault, kidnapping, and attempted kidnapping perpetrated by his landlord, members of the Augusta and Gardiner police departments, and others.

[¶ 26] Regarding Doe, the attached document indicated that she was among a group of other individuals whom the landlord illegally permitted to inhabit the other eleven units in the apartment building. Blackhouse also asserted that Doe had "repeatedly" assailed him with abusive dialogue, that she "loiters in common areas" that he could not avoid without confronting

her, and that these actions had occurred during a period of his "indoor confinement" which he attributed, not to Doe, but to an "illegal requirement" that he pay rent to his landlord.

[¶ 27] Blackhouse further asserted that Doe appears in common areas of the apartment building, such as the laundry area, which, he contended, should not be occupied by any other tenants in the building. He also objected to her being near the entranceway to the building, which he found offensive. Blackhouse complained of some statements that he asserts Doe made to him, including, for example, "Don't you run up those stairs," and asserted that she has at times snickered at him because of some of his actions, such as his closing the fire door on an upper floor of the building.

[¶ 28] For relief, Blackhouse asked that Doe be prevented from contacting him and "any minor children in my charge," that she be excluded from his residence, and that she be excluded from being, repeatedly and without reasonable cause, at or in the vicinity of his home, school, business, or place of employment. He also asked that he be given possession of, and that Doe be ordered to leave immediately, the entire twelve-unit apartment building.

[¶ 29] Blackhouse further requested that he be given possession of "any money being delivered to [the landlord] as alleged 'rent' given the building's illegal financing via SSDI extortion." He also requested that Doe be ordered to pay him support, damages, and attorney fees, and that he be given "the right to initiate eviction proceedings against occupants of [the apartment building]." He also suggested that the owner of the building should not be attempting to sell the building during the pendency of the litigation and requested

that he be exempted from paying rent.[4]

[¶ 30]  In addition to the filings directly attached to the protection from abuse complaint, Blackhouse filed a separate "REQUEST FOR REASONABLE ACCOMMODATION AND ACCOMMODATION OF VICTIM–RELATED NEEDS RELATIVE TO HABEAS CORPUS VIOLATIONS."  In this document, Blackhouse advised, as he had stated in his earlier action, that he was "fully disabled" and that he suffered "combat-level post-traumatic stress disorder ('PTSD') specific to having survived an abduction and medical torture."  Blackhouse stated that the disability prevented him from being physically present in court during the proceedings. He further advised that he should have no contact with uniformed police officers and no visits at his home by representatives of the court without advance notice.

[¶ 31]  Blackhouse requested that his alleged disability and his "status as a victim of wrongful confinement" be accommodated by allowing him to proceed without having to enter the physical premises of the court.  His request for accommodation further addressed his unhappiness with having to pay rent, alleging that, because of the "extortion" to which he was subjected, he could not pay to get documents notarized and that therefore "notarization requirements themselves will forestall [c]ourt proceedings until the matter of the financial exploitation is addressed."  Other than his own personal statement, Blackhouse provided no documentation, copies of any medical reports, or anything else indicating his alleged disability.

[¶ 32]  Blackhouse requested that the court review the issues relative to his habeas corpus concerns, and he specifically requested that, as part of his accommodation, he not be required to pay rent until the matter was resolved.

[¶ 33]  Upon review of the merits of Blackhouse's complaint, the court (*Mullen, J.*) denied the request for a temporary order, correctly concluding that "the allegations in the sworn complaint are insufficient to support a finding that the plaintiff and/or minor child(ren) is/are in immediate and present danger of abuse from the defendant."  Because the court acted based on its proper finding that the totality of the facts as alleged were insufficient to support granting an ex parte temporary order of protection, the court would have had no need to review Blackhouse's request for reasonable accommodation. However, it must be noted that in accordance with the accommodation that Blackhouse had requested, the court acted on his pleadings without requiring that he be present at the courthouse.  Thus, although the court may not have reviewed his request for accommodation, Blackhouse received the accommodation he requested at the temporary order stage.  The court scheduled the matter for a final hearing on the complaint for protection from abuse on May 24, 2010.

[¶ 34]  Doe was served with the complaint on May 14, 2010.  There is no indication that Doe has ever appeared in this matter.

[¶ 35]  On May 24, 2010, the court (*Soucy, J.*) apparently called the list of pending cases and, when Blackhouse did not appear for the hearing, dismissed the protection from abuse complaint.  In common practice, the court, upon calling the case

---

4.  Despite these significant claims for relief against the landlord, other tenants, and others in the community, neither the trial court, nor this Court, has apparently considered whether Blackhouse's complaint should be dismissed for failure to join indispensable parties, M.R. Civ. P. 19(b), or for failure to state the reasons why persons against whom relief is sought are not joined as parties, M.R. Civ. P. 19(c).

and having no party appear, would have dismissed the case without reviewing the file any further. Thus, the only review of the merits of Blackhouse's claims occurred at the temporary order stage.

[¶ 36] Blackhouse then brought this appeal. On appeal Blackhouse does not contend that he would have presented any new information that was not before the court (*Mullen, J.*) when it reviewed his pleadings and found his allegations insufficient to justify granting a temporary order providing his requested relief. Blackhouse does contend that the court should have accommodated his alleged disability, heard his case without his being present, and taken the judicial action he requested to exclude Doe from her home and force her to pay him money.

[¶ 37] A person's right to quiet enjoyment of her residence is a fundamental right to which Doe was entitled, absent some strong proof of impropriety relating to her actions regarding the residence. Further, in any action to exclude Doe from her residence, and in any protection from abuse action, Doe had a right to confront and counter the evidence against her, as we recently held in *Jusseaume v. Ducatt*, 2011 ME 43, ¶¶ 11–15, 15 A.3d 714, 717–18.

[¶ 38] Considering the allegations in this case, the court could not have, and should not have, granted Blackhouse's request to exclude his elderly neighbor from her residence without first hearing from Doe and affording her far more process than Blackhouse wanted the court to give her by considering his request for relief without his needing to be present.

[¶ 39] Before consideration of what accommodation, if any, to allow Blackhouse for his alleged disability, the court had a responsibility to evaluate the merits of his protection from abuse claim. There is no right to maintain, and force a named defendant to defend, an incredible, frivolous, or bizarre claim. A person claiming a disability has no greater right than any other person to circumvent the court's essential gatekeeping function on these issues.

[¶ 40] Addressing a court's gatekeeping function, the United States Supreme Court, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), has held that a complaint, to avoid dismissal, must be "plausible on its face":

> [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.

[¶ 41] The complaint here, not being plausible on its face, was appropriately dismissed. Other examples of court gatekeeping activities include *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (stating that a court may refuse to allow action to proceed beyond the summary judgment stage based on a story that is "blatantly contradicted by the record, so that no reasonable jury could believe it"); *United States v. Cooper*, 170 F.3d 691, 692 (7th Cir.1999) (stating that a criminal defendant has no constitutional requirement or right to take frivolous appeal); M.R. Civ. P. 91(b) (stating that no entitlement to waiver of fees for indigent maintaining frivolous action).

[¶ 42] Rather than enabling an implausible claim, a court may sanction an individual for bringing a frivolous, vexatious, or implausible protection from harassment or protection from abuse action. *See Boggs v. Berthiaume*, 2008 ME 169, ¶ 3, 959 A.2d 739, 740–41. In fact, in some instances where, as here, an individual has a history of asserting frivolous, vexatious,

or implausible claims, we have held that an individual may be barred from bringing further claims without first receiving court permission. *See Spickler v. Key Bank of So. Me.*, 618 A.2d 204, 207–08 (Me.1992).

[¶ 43]   On the face of the pleadings filed by Blackhouse, and considering the history of his prior action, the wide ranging and severe relief Blackhouse was seeking against Doe and many others, the deprivation of due process for Doe that Blackhouse was requesting as an accommodation, and the apparent incredibility of many of Blackhouse's claims, the trial court properly dismissed Blackhouse's action.   The finding of insufficiency of the evidence on the merits, made at the temporary order stage, can be affirmed when there is no suggestion that at the final hearing stage any evidence would have been presented that was not before the court when it denied the request for a temporary order.

[¶ 44]   Reasonable accommodation of anyone with a disability who must be before the court, or who seeks to bring a proper action before the court, is appropriate and is part of our obligation to provide access to justice.   But that obligation to provide reasonable accommodation does not extend to lending a hand to promote a facially frivolous, vexatious, or incredible claim, and doing so, as Blackhouse requests, by depriving the targets of his accusations of the right to confront their accuser who seeks to take their money and jeopardize their fundamental right to quiet enjoyment of their homes.

[¶ 45]   Because the court appropriately performed its gatekeeping function in this case, and that gatekeeping function had to be performed before consideration of Blackhouse's request for reasonable accommodation in the trial setting, I would affirm the judgment of the District Court.   Alternatively, I would conclude that the dismissal in this case was harmless error in light of the apparent failure to join indispensable parties against whom relief was sought, or to explain why they were not joined, as required by M.R. Civ. P. 19(b), (c), although that would be an issue for the trial court to consider in the first instance.