STATE OF MAINE                                        SUPERIOR COURT
CUMBERLAND, ss                                        CIVIL ACTION
                                                      DOCKET NO. CV-12-098


GREGORY M. DOUGLAS
and PAM DOUGLAS,

          Plaintiffs

v.                                                    ORDER

PARKVIEW ADVENTIST
MEDICAL CENTER, STEPHEN
BOYD, M.D., PETER J.
DIPIETRANTONIO, M.D., and
MYRON KRUGER, M.D.,

          Defendants


BACKGROUND

     In February and March 2011, plaintiff Gregory M. Douglas was evaluated by

Philip Morse, Ph.D. of Neurobehavioral Services of New England (NBSNE). Plaintiffs

have designated Dr. Morse as an expert witness at trial. Defendants subpoenaed

documents, including neuropsychological and psychological test data and test materials,

from NBSNE. (Defs.' Ex. M; Defs.' Br. 3-7.) NBSNE refused to produce the

documents pursuant to 22 M.R.S. § 1725. (NBSNE Ex. 1; Defs.' Ex. O.) Defendants

requested a discovery conference with the court. M.R. Civ. P. 26(g).

     The discovery conference was held on April 25, 2017. The withheld documents,

filed under seal, and the parties' briefs were filed on May 5, 2017. The court has

considered the documents filed under seal and other evidence presented and the

1

arguments of counsel. For the following reasons, plaintiffs and NBSNE are not required to provide the documents to defendants.

DISCUSSION

NBSNE[1] argues that section 1725(2) prohibits, without exception, producing the requested neuropsychological and psychological test materials and/or test data to unqualified third parties, including litigants. NBSNE bases its argument on the plain language of the statute, with reference to rules of statutory construction, and the legislative history of the statute. NBSNE also discusses and attempts to distinguish Wayne v. Kirk, 2016 U.S. Dist. LEXIS 17692 (N.D. Ill. Feb. 9, 2016). Alternatively, NBSNE requests that if the court takes the approach used in Wayne, limitations should be imposed such as "attorneys' eyes only," requiring the materials and the related information to be kept confidential, and requiring the return and destruction of any materials at the conclusion of the litigation. (NBSNE Br. 10-11 n.4.)

Defendants argue that the plain language of section 1752 permits the disclosure of the test materials and data unless disclosure "would compromise the objectivity or fairness of the evaluation method or process...." 22 M.R.S. § 1752(2). Defendants argue that the subpoenaed party, NBSNE, must demonstrate how disclosing the material at issue would compromise the objectivity or fairness of the evaluation method or process and if NBSNE cannot sustain that burden, the documents must be produced. Defendants contend that individual psychologists and the American Psychology Association have already published and made available extensive information about tests and the raw data associated with psychological tests, a number of which are marketed to and used by

---

[1] Plaintiffs join in NBSNE's argument that the documents should not be produced.

2

attorneys. Defendants rely on Wayne v. Kirk, the Illinois statute, similar but not identical to Maine's, and Campbell v. Mashek, No. 65070 (Iowa Dist., Polk Cnty. Oct. 24, 1995).

1. Section 1725

As enacted, section 1725 provides, in relevant part:

> 2. …The disclosure of neuropsychological or psychological test materials and neuropsychological or psychological test data is governed by this subsection.
>
> A. Except as provided in paragraph B, neuropsychological or psychological test materials and neuropsychological or psychological test data, the disclosure of which would compromise the objectivity or fairness of the evaluation methods or process, may not be disclosed to anyone, including the person who is the subject of the test, and are not subject to disclosure in any administrative, judicial or legislative proceeding.
>
> B. A person who is the subject of a neuropsychological evaluation or psychological evaluation is entitled to have all records relating to that evaluation, including neuropsychological or psychological test materials and neuropsychological or psychological test data, disclosed to any neuropsychologist or psychologist who is qualified to evaluate the test results and who is designated by the person. A neuropsychologist or psychologist designated to receive records under this paragraph may not disclose the neuropsychological or psychological test materials and neuropsychological or psychological test data to another person.

22 M.R.S. § 1725(2) (2016).

The court concludes that this statutory language is plain and unambiguous. See Dickau v. Vermont Mut. Ins. Co., 2014 ME 158, ¶ 19, 107 A.3d 621. The language of the statute provides that neuropsychological or psychological test materials and neuropsychological or psychological test data may be disclosed only to a qualified neuropsychologist or psychologist designated by the person evaluated. 22 M.R.S. § 1725(2)(A)-(B) ("Except as provided in paragraph B . . . .").[2] The court does not conclude that the statute creates more than one exception and such materials may be disclosed as long as the disclosure does not compromise the objectivity or fairness of the

_____

[2] Defendants have not pursued this approach.

3

evaluation methods or process. 22 M.R.S. § 1725(2)(A); see Mumid v. Abraham Lincoln High School, 618 F.3d 789, 798 (8th Cir. 2010) (nonrestrictive clause does not identify or define the antecedent noun but is parenthetic); State Farm Mut. Auto Ins. Co. v. Koshy, 2010 ME 44, ¶ 32, 995 A.2d 651 (concepts of grammatical construction of legislation are followed); City of Bangor v. Penobscot County, 2005 ME 35, ¶ 9, 868 A.2d 177 (look to the plain meaning of the statute; nothing is "treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible."); Town of Eagle Lake v. Comm'r, Dep't of Educ., 2003 ME 37, ¶ 7, 818 A.2d 1034 ("We consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved."). Accordingly, the court does not accept defendants' argument that NBSNE has the "burden to prove the condition expressly required in order to trigger that prohibition for the documents to be subpoenaed: that their disclosure would 'compromise the objectivity or fairness of the evaluation methods or process.'" (Defs.' Br. 8.)

2. Legislative History

Even assuming the statute is ambiguous, the legislative history of section 1725, although brief, confirms that there is only one exception to nondisclosure of the materials. As initially put forward, the proposed bill, L.D. 1155, did not include an emergency preamble and did not contain the phrase, "the disclosure of which would compromise the objectivity or fairness of the evaluation methods or process" in section 2(A). Instead, the bill first provided:

> Except as provided in paragraph B, neuropsychological or psychological test materials and neuropsychological or psychological test data may not be disclosed to anyone, including the person who is the subject of the test,

4

and are not subject to disclosure in any administrative, judicial or legislative proceeding.

L.D. 1155, Original Bill § 1725(2)(A) (126th Legis. 2013).

The phrase, "the disclosure of which would compromise the objectivity or fairness of the evaluation methods or process," was proposed in amendment that was "distributed by Bob Howe for the Maine Psychological Association." Comm. Amend. A to L.D. 1155, No. H-442, § 1725(2)(A) (126th Legis. 2013). The legislative history also contains a letter dated April 29, 2013 in support of LD 1155 submitted by the President of the Maine Psychological Association, who explains that the bill was modeled after Illinois state law. An Act to Ensure the Integrity of Neuropsychological Testing Materials, 126th Legisl. (2013) (testimony of Jeff Matranga).

The amended, and subsequently adopted, language also contains an "Emergency preamble." Comm. Amend. A. to L.D. 1155, No. H-442, 1, 3 (126th Legis. 2013). Based on the emergency cited in the preamble, the bill took effect when approved. The preamble provides, in part:

> **Whereas,** current law does not protect from disclosure neuropsychological and psychological testing materials; and
>
> **Whereas,** disclosure of neuropsychological and psychological testing materials and distribution to even just one person who is the subject of testing or to many persons who may be the subjects of the testing will compromise and invalidate such testing; and
>
> **Whereas,** maintaining the integrity of the testing materials is critical to test results and to the functioning of the system of neuropsychological and psychological testing in this State and requires immediate action of the Legislature . . . .

Id. The preamble makes clear that disclosure to anyone other than a qualified neuropsychologist or psychologist will compromise and invalidate the testing materials.

5

3. Case Law

    a. Wayne v. Kirk

In Wayne, plaintiff filed a section 1983 action against a municipality and four police officers and alleged, among other things, false arrest and excessive force resulting in severe emotional distress and post-traumatic stress disorder. 2016 U.S. Dist. LEXIS 17692, *1 (N.D. Ill. Feb. 9, 2016). Plaintiff underwent a Rule 35 examination by a psychiatrist and psychologist retained by defendants to assess plaintiff's metal health condition and injuries following his arrest as well as his status at the time of the examination. Id. at **4-5. Plaintiff filed a "motion to compel expert opinion basis materials" and sought copies of the neuropsychological test materials and the raw data from neuropsychological tests. Id. at *9. The defendants objected to the production of these materials and relied on 740 ILCS 110/3(c), which is similar but not identical to Maine's section 1725. The Illinois statute provides:

> (c) Psychological material whose disclosure would compromise the objectivity or fairness of the testing process may not be disclosed to anyone including the subject of the test and is not subject to disclosure in any administrative, judicial or legislative proceeding. However, any recipient who has been the subject of the psychological test shall have the right to have all records relating to that test disclosed to any psychologist designated by the recipient....

Id. at *10.

The Wayne court weighed the competing considerations at issue in the motion to compel before entering a document specific protective order. The court ordered disclosure to plaintiff, through counsel, copies of the Raw Data Sheet, a personality assessment inventory (PAI) clinical interpretive report (CIR), and a neuropsychological history questionnaire (NHQ). The court ordered publication of the Raw Data Sheet

6

because it was not persuaded that disclosure of the document would compromise the objectivity or fairness of the testing process because it is an internal form used to report the raw and/or scaled scores for a variety of psychological tests. The court ordered defendants to produce the PAI CIR because several portions of it were identical to a sample CIR available online. The defendants were permitted, however, to redact the portions of the CIR that were redacted on the sample CIR. Those redacted portions were to be made available to plaintiff's counsel before the depositions of the doctors. In addition, the court ordered the Raw Data and PAI be treated as attorneys' eyes only because plaintiff has not yet decided whether he would undergo future psychological testing in the case. The court also ordered production of the NHQ because it was merely a questionnaire, not a neuropsychological test. Id. at **28-31.

With regard to the remaining testing materials sought by plaintiff in Wayne, the court entered a protective order permitting the plaintiff, through counsel, to review the materials, but prohibited him from making or receiving copies. The court further ordered that plaintiff's counsel would have access to the documents during depositions of the doctors. Id. at *28. Finally, the court ordered that the withheld documents be provided to any expert retained by plaintiff. Id. at *33.

In reaching this result, the court in Wayne recognized the legitimate concerns for offering special protection to the psychological materials as well as the contractual and ethical considerations weighing against disclosure. The court observed, "the most common resolution for this type of dispute has been some compromise between full, unconditioned disclosure and total exemption from the Federal Rules of Civil Procedure."

7

Id. at *23 (quoting Taylor v. Erna, 2009 U.S. Dist. LEXIS 69033 (D. Mass. Aug. 3, 2009)).

### b. Campbell v. Mashek,

In Campbell, defendants requested information related to the neuropsychological examination of the plaintiff, including all raw test data and the psychological test information generated or received by the doctor. No. 65070 at 1-2 (Iowa Dist., Polk Cnty. Oct. 24, 1995). Defendants argued that suppression of the information

> would be inconsistent with any notice of justice and would keep the jury from being informed fully of the factual basis for his opinions, would deny defendants their due process rights in that it denies their ability to effectively cross-examine the doctor and, therefore, the doctor should not be able to testify and give his opinions on behalf of the plaintiffs. deny them their due process rights because they could not effectively cross-examine plaintiff's doctor.

Id. at 2.

> The relevant Iowa statute governing the dispute provided:

> Except as otherwise provided in this section, a person in possession of psychological test material shall not disclose the material to any other person, including the individual who is a subject of the test. In addition, the test material shall not be disclosed in any administrative, judicial, or legislative proceeding. However, upon the request of an individual who is the subject of a test, all records associated with a psychological test of that individual shall be disclosed to a psychologist licensed pursuant to Chapter 154B designated by the individual....

Iowa Code § 228.9 (1994). This statute is similar but not identical to Maine's section 1725 because the Iowa statute lacks the "compromise the objectivity or fairness" language. 22 M.R.S. § 1725(2)(A).

The Campbell court concluded that permitting plaintiff's expert to testify based on information obtained without allowing the defendants the right to vigorously cross-examine him with that information would deprive them of their right to confront

witnesses against them. As a result, the court determined that to the extent section 228.9 of the Iowa Code applied to the release of information, it was unconstitutional under the State and Federal Constitutions. Campbell, No. 65070 at 2-3. The court ordered the witness to testify concerning his test materials, opinions, and the facts and data supporting those opinions. The court required that information be given to defendants' experts and counsel, who could use the information for cross-examination, as possible exhibits, or for any other legal purpose during trial. The court ordered, however, that raw data and information obtained from plaintiff, "shall not be released to any other person, shall not be used for any other purpose other than the trial of this case, and the restrictions set out in Section 228.9 of the Iowa Code shall apply, except as otherwise set out." Id. at 3.

      c.  Taylor v. Erna

In Taylor, defendants sought production of the raw data and testing materials a doctor used in his neuropsychological evaluation of the plaintiff. 2009 U.S. Dist. LEXIS 69033 (D. Mass. Aug. 3, 2009). Massachusetts did not have a statute directly on point, but the court recognized conflicting demands between the federal rules of civil procedure and the American Psychological Association's ethical principles. In resolving the dispute, the court noted, as discussed above, that the "most common resolution...has been some compromise between full, unconditioned disclosure and total exemption from the Federal Rules of Civil Procedure." Id. at *7. The Taylor court noted that some courts have found testing materials need only be turned over to opposing counsel's qualified expert witness, while others have resolved the conflicting interests by issuing a protective order. Id. Ultimately, the court in Taylor determined the material should be produced

9

pursuant to a non-disclosure agreement protective order proposed by the defendants. Id. at *8.

        d.   Whitney v. Franklin Gen. Hosp.

In Whitney, plaintiff sought damages for, among other causes of action, alleged sexual harassment, sexual exploitation, and assault and battery. 2014 U.S. Dist. LEXIS 177182 (D. Iowa Dec. 23, 2014). Plaintiff's counsel agreed to produce raw data from neuropsychological tests to the defendant's expert psychologist, but refused to produce the information to defendants' counsel under the same Iowa statute at issue in Campbell v. Mashek. In addressing whether defendants' counsel should receive the materials, the Whitney court concluded that the "statutory limitations in Iowa Code § 228.9 and its Illinois counterpart are clear and unambiguous" and that the raw test data should be produced only to a licensed psychologist designated by plaintiff. 2014 U.S. Dist. LEXIS 177182, **11-12. Accordingly, the court ordered the raw test data produced to defendant's expert psychologist, but not to defendant's counsel. Id.

        e.   Walton v. N.C. Dep't of Agric. & Consumer Servs.

In Walton, plaintiff submitted to two mental examinations. 2011 U.S. Dist. LEXIS 77322 (E.D.N.C. July 15, 2011). The defendant's examining expert, however, opposed the production of the psychological testing materials to plaintiff. The expert had produced a written report of her psychological examination as well as various other documents provided to or generated by the doctor with regard to the examination. As in Massachusetts, North Carolina did not have a specific statute on point.

The Walton court resolved the dispute pursuant to the federal rules of civil procedure and declined to order the production of the test materials because it would

10

impose an undue burden on the expert by requiring her to violate ethical and contractual obligations. Id. *5. The court also noted that plaintiff impermissibly sought commercial information. Id.; see also Collins v. TIAA-CREF, 2008 U.S. Dist. LEXIS 67282, **12-13 (W.D.N.C. Aug. 22, 2008) (quashing subpoena to produce raw testing materials based on federal rules of civil procedure).

4. Due Process

The fact that section 1725 prohibits disclosure, as discussed above, is not the end of the inquiry. Defendants' arguments in Campbell are compelling. Campbell, No. 65070 at 2. In this case, failure to disclose the documents will affect defendants' cross-examination of plaintiff's expert and the amount of information provided to the jury. See Jusseaume v. Ducatt, 2011 ME 43, ¶¶ 12-15, 15 A.3d 714. The term "secret" is, in general, contrary to our system of justice. (Defs.' Ex. U 79.) Even records about children from the Department of Health and Human Services may be disclosed upon court order. See State v. Dechaine, 572 A.2d 130, 135 (Me. 1990) (discussing circumstances under which records created in connection with the Department of Human Service's child protective activities can be disclosed). The "erosion" of the credibility of the profession may be inevitable if secrecy is maintained, as argued by the authors in the article submitted by defendants. (Defs.' Ex. U 79.)

Unlike in Wayne and Campbell, however, defendants here offered no information or explanation to support their need for the documents or to identify which parts of the data sought is otherwise available. See Wayne, 2016 U.S. Dist. LEXIS 17692, *30 (plaintiff provided lengthy and specific explanation of why he needed specific information); Campbell, No. 65070 at 2 (defendants filed affidavits from four Ph.D.s).

11

Based on the court's reading of the statute, the burden is on defendants to show why the documents should be produced; the burden is not on NBSNE and plaintiffs to show why the documents should not be produced. The court has reviewed the documents filed under seal for in camera review.[3] Some of the handwriting is illegible. The documents that contain rating and scoring are meaningless to the untrained reader. The documents filled out by Mr. Douglas are understandable but the manner in which his answers are scored and evaluated is, once again, meaningless to the untrained reader.

Defendants' argument focused on the statutory language of section 1725 and case law. Aside from documents generated in this case, defendants offered two articles, two cases, one statute, and excerpts from the American Psychological Association Code of Conduct. (Defs.' Exs. U-Z.) No information was provided that specifically addresses the 27 categories of documents they seek and which parts of those categories may have been previously disclosed. (Defs.' Br. 5-7.) The exhibits are insufficient to give the court a reasoned and principled basis on which to order production of the documents in contravention of the statute or to reach the compromise achieved in Wayne. See Wayne, 2016 U.S. Dist. LEXIS 17692, **28-31.

The entry is

> Defendants' Request to Compel Production of Documents is DENIED.

Date: May 17, 2017

Nancy Mills
Justice, Superior Court

---

[3] With regard to the 27 categories identified in defendants' brief, the documents filed under seal included pages 20 through 23 in category 1; pages 61 through 69, although defendants describe them incorrectly as the same topic (Defs.' Br. 5.); and additional pages 16 and 160. (Defs.' Br. 5-7.)

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

JOHN FLYNN III, ESQ
FLYNN LAW OFFICE
35 CAIRN HILL ROAD
BOWDOINHAM, ME  04008

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

PHILIP COFFIN III, ESQ
LAMBERT COFFIN
PO BOX 15215
PORTLAND, ME 04112-5215

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

JAMES MARTEMUCCI, ESQ
GERMANI MARTEMUCCI & HILL
43 DEERING STREET
PORTLAND, ME 04101

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

DAVID HERZER, ESQ
DEVIN DEANE, ESQ
NORMAN HANSON & DETROY LLC
PO BOX 4600
PORTLAND, ME 04112-4600

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

CHRISTOPHER NYHAN, ESQ
DANIEL RAPAPORT, ESQ
PRETI FLAHERTY BELIVEAU PACHIOS LLP
PO BOX 9546
PORTLAND, ME 04112-9546