STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER DOCKET
DKT. NO. BCD-CV-20-17

OLD TOWN UTILITY &
TECHNOLOGY PARK, LLC, *et al.*,

    Plaintiffs,

v.

CONSOLIDATED EDISON
SOLUTIONS, INC., *et al.*

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFFS' MOTION
FOR LEAVE TO FILE THIRD
AMENDED COMPLAINT**

Pending before the Court is a motion to amend complaint brought by Plaintiffs Old Town
Utility & Technology Park, LLC, Relentless Capital Company, LLC, and Samuel Eakin.[1]
Defendants Consolidated Edison Solutions, Inc., Con Edison Clean Energy Business, Inc.,
Consolidated Edison Development, Inc., Consolidated Edison Energy, Inc., Ward Strosser, Jack
Bosch, Mark Noyes, Paul Mapelli, James W. Sewall Company, David Edson, Treadwell Franklin
Infrastructure Capital, LLC, and Stephen Jones oppose the motion. The Trustees of the University
of Maine System and the current and former Chancellor of the University of Maine System (the
"University Defendants") joined the aforementioned opposition and filed a separate opposition to
the motion to amend.[2]

The Court convened a hearing on September 23, 2020 and took the motion under

---

[1] The Court will refer to Plaintiffs collectively and individually throughout the order depending on which
is necessary for clarity.

[2] James Page was the Chancellor during relevant time periods in this case but retired in December 2018.
He is a party in his individual and formerly official capacity, but there still appears to be a claim alleged in
the proposed amended complaint that would apply against the current Chancellor. Attorney Ruprecht
represents James Page in his individual capacity and for the Chancellor of the University of Maine System,
while Attorney Strawbridge represents the Trustees of the University of Maine System, though they co-
signed their separate opposition.

advisement. After review of the proposed amended complaint, the parties' filings both in support of and against the motion for leave to amend, Federal District Court Judge Jon Levy's pertinent orders issued while this case was in federal court, the relevant law, and consideration of the parties' arguments at the hearing, the Court issues the following decision.

## BACKGROUND

This case stems from an attempted purchase and redevelopment of the Old Town Mill and a related plan to provide energy to the University of Maine. In effect, Plaintiffs contend that the various Defendants were engaged in an elaborate scheme "to procure a lucrative multi-decade energy performance contract to meet all the University [of Maine]'s energy needs, and were able to do so because public entities and officials associated with the University of Maine System . . . failed to follow laws regulating governmental procurement and public corruption." (Prop. Amnd. Compl. ¶ 1.) This scheme allegedly revolved around the Chancellor of the University of Maine System at the time, James Page, and his undisclosed financial interest in Sewall. (Prop. Amnd. Compl. ¶ 1.) Page allegedly manipulated a public bidding process in order to redound to the benefit of other the other named Defendants. (Prop. Amnd. Compl. ¶ 1.) Plaintiffs contend this scheme "deprived the Plaintiffs of valuable business opportunities to purchase and redevelop the former Expera Mill Facility in Old Town, Maine, and to participate in implementation of an energy performance contract with the University of Maine . . . ." (Prop. Amnd. Compl. ¶ 1.) The numerous Defendants played various roles in this alleged scheme.

Because the proposed amended complaint does not substantively change the basic factual allegations underlying this alleged scheme—other than eliminating the Racketeer Influenced and Corrupt Organization Act ("RICO") aspect of the complaint and attempting to provide more specifics to bolster claims previously dismissed by Judge Levy—the Court incorporates Judge

2

Levy's description of the general factual allegations. *See Old Town Util. & Tech. Park, LLC v. Consol. Edison, Sols.*, LLC, No. 2:19-cv-00029-JDL, 2019 U.S. Dist. LEXIS 168043, at *3-10 (D. Me. Sep. 30, 2019). The procedural history of the attempted amendments is described in two subsequent orders issued by Judge Levy. *See Old Town Util. & Tech. Park, LLC v. Consol. Edison*, No. 2:19-cv-00029-JDL, 2020 U.S. Dist. LEXIS 94294, at *3-8 (D. Me. May 29, 2020); *Old Town Util. & Tech. Park, LLC v. Consol. Edison, Sols., Inc.*, No. 2:19-cv-00029-JDL, 2019 U.S. Dist. LEXIS 222443, at *3-7 (D. Me. Dec. 30, 2019).

## LEGAL STANDARD

Because Defendants raised the issue of whether Plaintiffs' proposed amendments to the complaint would be futile, the Court lays out the standard of review for a motion to amend and the standard of review for a hypothetical motion to dismiss of the complaint were amendment to be granted in full.

A party must obtain leave of the court to amend the complaint after a responsive pleading is served, and "leave shall be freely given when justice so requires." M.R. Civ. P. 15(a). "Courts and commentators have repeatedly stressed that the Rule requires that leave to amend be liberally granted." *Barkley v. Good Will Home Ass'n*, 495 A.2d 1238, 1240 (Me. 1985). It is within the trial court's discretion whether to grant a motion to amend. *Diversified Foods, Inc. v. First Nat'l Bank*, 605 A.2d 609, 616 (Me. 1992). Because the Rule provides that "leave shall be freely given when justice so desires," generally, absent the moving party's bad faith or delay tactics, "the motion will be granted in the absence of undue prejudice." *Id.* However, futility of amendment may be a reason to deny a motion to amend. *Montgomery v. Eaton Peabody, LLP*, 2016 ME 44, ¶ 13, 135 A.3d 106. When "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *Id.* (quoting *Glynn v.*

3

*City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994) (holding that when a proposed amended complaint fails to state a claim for relief the trial court properly denied the plaintiffs' motion).

"A motion to dismiss tests the legal sufficiency of the complaint, the material allegations of which must be taken as admitted . . . ." *Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2019 ME 90, ¶ 16, 209 A.3d 116 (citations omitted). While the Court must accept as true all well-pleaded factual allegations in the complaint, it is "not bound to accept the complaint's legal conclusions." *Bowen v. Eastman*, 645 A.2d 5, 6 (Me. 1994) (citing *Robinson v. Washington Cnty.*, 529 A.2d 1357, 1359 (Me. 1987)). "A dismissal is only proper when it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim." *Packgen*, 2019 ME 90, ¶ 16, 209 A.3d 116 (alterations in original).

A complaint only needs to consist of a short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741. While Maine is a notice pleading state, that does not mean a plaintiff can "proceed on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶¶ 16-17, 19 A.3d 823. Thus, the plaintiff must "allege facts sufficient to demonstrate that [she] has been injured in a way that entitles . . . her to relief." *Id.* ¶ 17. When it comes to allegations of fraud and regarding a fiduciary relationship, the law requires a plaintiff to plead those allegations with particularity. *See Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710; *Bean v. Cummings*, 2008 ME 18, ¶ 8, 939 A.2d 676; M.R. Civ. P. 9(b).

## DISCUSSION

As an initial matter, Defendants assert that this Court should apply Judge Levy's analysis regarding Plaintiffs' dilatory conduct in their attempts to obtain leave to amend in federal court as

4

"law of the case."  The Court declines to do so because the case was only recently remanded back to state court and Plaintiffs diligently sought to obtain leave to amend upon remand.  The Court will instead analyze the motion for leave to amend on the other basis raised by Defendants: whether the proposed amendments would be subject to a motion to dismiss for failure to state a claim.[3]

1. Count I – Fraud against Strosser, Bosch, Con Ed Solutions, Edson, and Sewall

Plaintiffs' fraud claim raises two types of fraud: fraud by affirmative false representation and fraud by omission.  Defendants contend leave to amend should not be granted regarding the fraud claims at all because all the proposed fraud allegations would simply be dismissed for failure to state a claim.  Defendants also urge the Court to apply the "plausibility" standard applied by the United States Supreme Court on motions to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").  This arguably is a stricter standard than the pleading standard in Maine, even for claims that must be pleaded with particularity.  The Court is not aware of any Law Court case ever adopting the "plausibility" standard[4] and declines to do so until the Law Court clearly states that it is the law in Maine.  Though other Superior Court decisions have applied it, this Court is not bound by those decisions.  The Court will analyze whether the proposed amendments state a claim under the law

---

[3] Judge Levy's September 30, 2019 order—the last to address the substantive nature of the state law claims—did not dismiss three state law counts: a breach of contract (the Teaming Agreement) claim against Con Ed Solutions (Count IV); a breach of contract (the OTU Operating Agreement) claim against Sewall and Edson (Count VI); and breach of fiduciary duty (stemming from the Operating Agreement) claim against Sewall and Edson (Count VIII).  The Court does not address these.

[4] Justice Alexander applied it in a dissent.  *See Blackhouse v. Doe*, 2011 ME 86, ¶¶ 40-41, 24 A.3d 72.  It was cited in a majority opinion but in the context of particularity, not for the purpose of adopting the plausibility standard.  *See Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).  This Court has been unable to find any majority Law Court decisions clearly applying it.

as it presently exists in Maine.

In Maine, in order to sufficiently plead a fraud claim, a plaintiff must allege (under M.R. Civ. P. 9(b)'s more stringent standard) the following facts: (1) a party made a false representation; (2) the representation was of a material fact; (3) the representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false; (4) the representation was made for the purpose of inducing another party to act in reliance upon it; and (5) the other party justifiably relied upon the representation as true and acted upon it to the relying party's damage. *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280 (citing *Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640); *see also Gallagher v. Penobscot Cmty. Healthcare*, No. CV-16-54, 2017 Me. Super. LEXIS 215, at *31 (Mar. 21, 2017) (quoting *J.S. McCarthy, Co. v. Brausse Diecutting & Converting Equip.*, 340 F.Supp.2d 54, 59 (D. Me. 2004)) (pointing to the comparable Fed. R. Civ. P. 9(b) and explaining that "a plaintiff must, at a minimum, allege the 'time, place, and content of the alleged false representation,' or the count is subject to dismissal"); 2 Harvey & Merritt, *Maine Civil Practice* § 9:2 at 384 (3d, 2011 ed.) ("The misrepresentation itself, including its materiality, the reliance thereon and the damages resulting therefrom, must be set forth with particularity.").

Affirmative false misrepresentations are not the only types of misrepresentations that can suffice for a fraud claim, however. An omission by silence may constitute the supplying of false information for fraudulent misrepresentation. *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996). However, this is only true in certain circumstances: where there is either "(1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose." *McGeechan v. Sherwood*, 2000 ME 188, ¶ 61, 760 A.2d 1068 (quoting *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995)); *Glynn v. Atl. Seaboard Corp.*, 1999 ME 53, ¶ 12, 728 A.2d 117 ("Where a fiduciary relationship exists between the parties, 'omission

6

by silence may constitute the supplying of false information.'") (quoting *Binette*, 688 A.2d at 903) (citing *Brae Asset Funds. L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995).

Count I of the proposed complaint alleges various forms of fraud. The first type of fraud alleged in Count I involves "Strosser and Edson ma[king] false representations of material facts to the Plaintiffs by repeatedly denying the existence of a financial relationship between Page and Sewall, by claiming that the issue had been 'vetted,' and by failing to disclose that they were bribing Page."[5,6] (Prop. Amnd. Compl. ¶ 253.) Therefore, the first two aspects of this portion of Count I relate to affirmative representations.

As it pertained to the false representations, Judge Levy concluded that Plaintiffs' first iteration of the complaint "d[id] not meet the first element of fraud under Maine law, because it fail[ed] to sufficiently plead the time, place, and content of the alleged representations." *Old Town Util. & Tech.*, 2019 U.S. Dist. LEXIS 168043, at *23. In an attempt to remedy this, Plaintiffs

---

[5] The Court finds the Defendants' point in footnote 12 of their brief regarding the "bribery" allegations particularly persuasive. (Def.s' Omnibus Opp. 21-22 n.12.) The removal of the "on information and belief" qualifiers to allegations regarding bribing Page and the reformulation of many of these same allegations later in the proposed amended complaint "on information and belief" "do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded." *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987). The proposed amended complaint does not detail in any comprehendible manner the facts upon which Plaintiffs' beliefs about the bribery scheme are based. Therefore, to the extent the proposed amended complaint's fraud allegations are based on "information and belief" pleading regarding the alleged bribery scheme without a sufficient foundation establishing the factual basis for the allegations, leave to amend will not be granted. (*See, e.g.*, Prop. Amnd. Compl. ¶¶ 253 ("to disclose that they were bribing Page"), 264 ("hiding the existence of . . . CVG's bribe of Page").) The allegations regarding the "bribery conspiracy" are not well-pleaded factual allegations. Plaintiffs use these allegations in an attempt to allege conspiracy liability for Defendants who may not have had a direct role in the alleged tortious conduct. *See McNally v. Mokarzel*, 386 A.2d 744, 748 (Me. 1978) ("conspiracy is . . . a rule of vicarious liability"). To the extent the proposed amended complaint attempts to allege a grand fraudulent bribery conspiracy in which all the named Defendants could be vicariously liable for others' tortious conduct, it is insufficient because it is based on information and belief without setting forth any *facts* upon which the beliefs are founded.

[6] The Court will address the issues of individual liability later in this order. Any references to individual Defendants before then is only intended for clarity of the actors and is not done to express a legal ruling on whether Plaintiffs have sufficiently alleged claims against the individual Defendants other than Edson, as identified by Judge Levy in his September 30, 2019 order.

pointed to three dates in 2016 where affirmative false representations about Page's supposed ongoing financial interest in Sewall were allegedly made: January 25, March 15, and April 19.[7] (Prop. Amnd. Compl. ¶¶ 63-64, 84, 86-87, 103, 254.) Plaintiffs provided context and even times in certain places. Therefore, they have remedied the defects identified by Judge Levy.

Nonetheless, Plaintiffs must still allege facts to satisfy the other elements. Judge Levy addressed only the first element. *Old Town Util.*, 2019 U.S. Dist. LEXIS 168043, at *23 n.8 ("Because I conclude that the first element has not been met, I do not address the remaining elements with respect to the allegations in ¶ 268 of Count III."). Assuming without deciding that Plaintiffs' proposed amended complaint meets the second, third, and fourth elements, Plaintiffs' allegations regarding justifiable reliance and damages [8] are conclusory and contradictory. Plaintiffs simply recite the element of justifiable reliance: "The Plaintiffs justifiably relied on these misrepresentations, to their detriment." (Prop. Amnd. Compl. ¶ 262.) This is not enough for a

---

[7] Defendants fault Plaintiffs for including the January 25 and April 19 dates because the statements on those dates were made to third parties in Eakin's presence. (Def.s' Omnibus Opp. 18.) Plaintiff responded by pointing to the Restatement section covering situations where a false representation is "made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." Restatement (Second) of Torts § 533 (1977). Arguably, as alleged, the substance was communicated to Eakin due to his presence while the statement was made to a third party. This at least appears to be sufficient at this preliminary stage. *Burr* is not on point because the plaintiffs there "knew the statement to be false—knowledge that is incompatible with a fraud claim." *Morton v. Burr*, No. BCD-RE-13-03, 2014 Me. Bus. & Consumer LEXIS 34, at *11 (May 23, 2014). There is nothing in Plaintiffs' complaint to suggest that Eakin knew the alleged statements were false when made.

[8] Plaintiffs own allegations undercut a part of the detriment they allegedly suffered as a result of relying on these statements. Plaintiffs contend the damages they sustained, in part, included "expenditure of time, money and resources performing under the Teaming Agreement and pursuing purchase, development and financing of the Facility." (Prop. Amnd. Compl. ¶ 263.) Yet, Plaintiffs also allege that, had they known about Page's alleged financial interest in Sewall, they "would have insisted on public disclosure of that interest, and on transparent structures that would ensure that any participation by Sewall in ownership of the Facility or in execution of a University energy services bid would avoid the creation of any conflict of interest or appearance thereof." (Prop. Amnd. Compl. ¶ 90.) Even under their own allegations, Plaintiffs would have continued to expend time, money, and resources in pursuit of the project had Page's alleged financial interest in Sewall been disclosed.

claim subject to heightened pleading standards: "The complaint must allege facts with sufficient particularity so that, if true, they give rise to a cause of action; merely reciting the elements of a claim is not enough." *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249; *see also Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 7, 54 A.3d 710 (critiquing a "complaint merely recit[ing] in conclusory fashion the elements of a" claim subject to heightened pleading standards); 2 Harvey & Merritt, *Maine Civil Practice* § 9:2 at 384 (3d, 2011 ed.) ("The misrepresentation itself, including its materiality, the reliance thereon and the damages resulting therefrom, must be set forth with particularity."). Nowhere else in the proposed amended complaint is justifiable reliance alleged with particularity either. For that reason, the fraud-by-affirmative-false-representation portion of Count I in the proposed amended complaint fails to state a claim because it does not allege justifiable reliance with particularity.

The remainder of Count I deals with failures to disclose various information. (Prop. Amnd. Compl. ¶¶ 264-73, 274-83, 284-94.) As noted above, an omission by silence may constitute the supplying of false information for fraudulent misrepresentation. *Binette*, 688 A.2d at 903. Plaintiffs must plead sufficient facts regarding "(1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose." *McGeechan*, 2000 ME 188, ¶ 61, 760 A.2d 1068.

Plaintiffs' allegations regarding active concealment are wholly insufficient as they amount to legal conclusions that the Court does not have to credit. *See Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166. In what seems to be circular reasoning, Plaintiffs repeatedly state that various Defendants actively concealed the information by failing to disclose it.[9] There must be more. *See Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 24, 742 A.2d 898

---

[9] Plaintiffs seem to suggest that there is a lessened pleading standard for fraud by omission through active concealment. (Mot. Leave Amnd. 6.) The Court disagrees. The Rule is explicit: "In *all* averments of fraud

9

(quotation marks omitted) ("Active concealment of the truth connotes steps taken by a defendant to hide the true state of affairs from the plaintiff."); *see also* 37 Am. Jur. 2d *Fraud and Deceit* § 197 (footnote omitted) ("Thus, as a general rule, to constitute fraud by concealment or suppression of the truth, there must be something more than mere silence or a mere failure to disclose known facts."). To the extent the proposed fraud claim alleges failures to disclose and relies on active concealment, it fails to state a claim for relief.

The other means by which Plaintiffs can allege fraud by omission is by pleading facts regarding a failure to disclose. Plaintiffs have alleged a failure to disclose rising to the level of fraudulent misrepresentation regarding a failure to disclose that Strosser, Bosch, Con Ed Solutions, Edson, and Sewall were "bribing" Page; a failure to disclose existence of teaming agreements with CVG and MDP; a failure to disclose Con Ed Solutions' coordination with OTU's competitor for buying the mill; a failure to disclose CVG's "bribe" to Page; a failure to disclose the existence of coordination with the CVG Parties to facilitate the CVG Parties' efforts to replace OTU as purchaser of the mill; and a failure to disclose that CVG had procured a delay in the announcement of the RFP Phase II finalists to buy CVG time to buy the mill. (Prop. Amnd. Compl. ¶¶ 253-94.)

A failure to disclose rising to the level of a fraudulent misrepresentation must be done by pleading particularized facts regarding a specific relationship imposing on the Defendants an affirmative duty to disclose. *See, e.g.*, *Glynn*, 1999 ME 53, ¶ 12, 728 A.2d 117 (quotation marks omitted) ("Where a fiduciary relationship exists between the parties, omission by silence may constitute the supplying of false information."); *see also* 37 Am. Jur. 2d *Fraud and Deceit* § 201 (footnotes omitted) ("A duty to disclose arises from a classical fiduciary relationship, or where one

---

or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." M.R. Civ. P. 9(b) (emphasis added). The Rule does not distinguish between fraud by affirmative false representations and fraud by omission and the subparts thereof.

party expressly or by clear implication places a special confidence in the other, or from the confidential relations of the parties or from the particular circumstances of the case."). "The elements of a fiduciary relationship are (1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 18, 133 A.3d 1021 (quotation marks omitted). The "disparity of position" element requires that the plaintiff suffered from "diminished emotional or physical capacity" or otherwise engaged in a "letting down of all guards and bars." *Id.* "To survive a motion to dismiss, the plaintiff must allege facts with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Ramsey*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted). "Reciting the basic elements of a fiduciary relationship cannot substitute for an articulation in the complaint of the specific facts of a particular relationship." *Id.* (quotation marks omitted).

As Judge Levy concluded, Plaintiffs did not do so in the federal case regarding Con Ed Solutions (and those associated individuals). *See Old Town Util.*, 2019 U.S. Dist. LEXIS 168043, at *23-25. There are still no well-pleaded factual allegations in the proposed amended complaint to establish a common law fiduciary relationship between Plaintiffs and Con Ed Solutions, and the Teaming Agreement with Con Ed Solutions does not detail fiduciary responsibilities like the Operating Agreement with Sewall does.

On the other hand, Judge Levy noted the possibility that the situation could be different with Edson and Sewall and the involvement with CVG:

> The complaint does, however, sufficiently allege that Sewall Company and Edson had a fiduciary relationship with the Plaintiffs roughly spanning the latter half of 2016 under the terms of the Operating Agreement, which explicitly addressed fiduciary responsibilities. *See infra* Section II.E.2. Nevertheless, the allegation as to Sewall Company and Edson does not specify the

11

> time and place of the omissions as required by Rule 9(b). Though other allegations in the complaint establish a loose timeline of Sewall Company and Edson's supposed involvement in CVG, *see, e.g.*, ECF No. 1-4 ¶¶ 136-38, those allegations are pled on "information and belief," and "information-and-belief pleading is not sufficient to satisfy the rule requiring pleading with particularity." *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 247 (1st Cir. 2006).

*Id.* at \*25. Because the Operating Agreement expressly addressing fiduciary duties between Sewall, Relentless, and Old Town Holdings was entered into on July 15, 2016, Plaintiffs needed to allege with particularity when Sewall and Edson failed to disclose pertinent information after that date *as well as* allege "the circumstances constituting fraud . . . with particularity." M.R. Civ. P. 9(b). While Plaintiffs did add several dates to the proposed amended complaint regarding these alleged failures to disclose, *see, e.g.*, Prop. Amnd. Compl. ¶¶ 265(a)-(j), 275(a)-(j), 285(a)-(i), the circumstances constituting the fraud regarding Sewall and Edson's involvement in the scheme with CVG were not alleged with particularity. Instead, much as Judge Levy found in his September 30, 2019 order, they are still overwhelmingly alleged on information and belief. (*See, e.g.*, Prop. Amnd. Compl. ¶¶ 92, 94, 104, 110, 118, 143, 146-50, 157, 161, 167, 178, 180, 191, 197, 236, 241.) "[A]llegations based on 'information and belief,' as in the instant complaint, do not satisfy the particularity requirement *unless* the complaint sets forth the facts on which the belief is founded." *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987) (emphasis added). The proposed amended complaint does not set forth the facts upon which the beliefs are founded. Therefore, Plaintiffs still have not remedied the defects regarding fraud by failure to disclose identified by Judge Levy.

To summarize, Plaintiffs have not sufficiently alleged fraud by affirmative misrepresentation against Sewall, Edson, and Con Ed Solutions regarding Page's alleged financial interest in Sewall. As it pertains to the various alleged failures to disclose, Plaintiffs have not

alleged active concealment. Nor have Plaintiffs alleged sufficient facts to establish a relationship with Con Ed Solutions imposing on Con Ed Solutions an affirmative duty to disclose. Such a relationship did exist with Sewall and Edson based on the OTU Operating Agreement beginning on July 15, 2016, but Plaintiffs' allegations of the circumstances constituting the fraud of Sewall and Edson's involvement in the CVG scheme are based only on information and belief without clearly providing detail on the facts upon which Plaintiffs' beliefs are founded. Leave to amend the fraud claim is therefore not granted.

2. <u>Counts II and III – Tortious Interference against Bosch, Mapelli, Noyes, Strosser, Con Ed Clean Energy, Con Ed Development, Con Ed Energy, Con Ed Solutions, Edson, Sewall, Jones, Treadwell, and Page</u>

In Count II, Plaintiffs allege tortious interference with prospective economic advantages in OTU's Purchase Agreement with MFGR; OTU's Advisory Agreement with MFGR; and OTU's partnership with the City in developing, purchasing, and financing purchase of the mill. (Prop. Amnd. Compl. ¶ 296.) "Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104; *see also* Alexander, *Maine Jury Instruction Manual* § 7-33 (2019-2020 ed. 2019). ("For a tortious interference with contract claim, the plaintiff must prove, that it is more likely than not that: 1. the plaintiff had a valid contract or prospective economic advantage; 2. the defendant, by fraud or intimidation; 3. induced [ _____ a third party] to break a contract or advantageous relationship with the plaintiff; 4. the contract or advantageous relationship would have continued but for such wrongful interference; and 5. the plaintiff has been damaged by the interference."). Plaintiffs contend Con Ed Solutions, Strosser, Bosch, Edson, and Sewall tortiously interfered in

13

the above-listed prospective economic advantages through fraud by:

- Failing to disclose Con Ed Solutions' teaming agreement with CVG, Con Ed Solutions' relationship and support for the efforts of OTU's competitor for ownership of the mill, and the "bribes" to Page, Prop. Amnd. Compl. ¶¶ 297-300;

- Failing to disclose the existence of coordination with the CVG parties to facilitate the CVG parties' efforts to replace OTU as purchaser of the mill, Prop. Amnd. Compl. ¶¶ 301-03; and,

- Failing to disclose that CVG had procured a delay in the announcement of the RFP Phase II finalists to buy CVG time to buy the mill, Prop. Amnd. Compl. ¶¶ 304-06.

These are the same failures to disclose that the Court concluded did not sufficiently constitute allegations of fraud by omission due to the lack of the requisite duties to disclose *and* due to the circumstances of the alleged fraud being based overwhelmingly on allegations on information and belief. Therefore, leave to amend Count II will be not granted regarding these allegations.

Plaintiffs next allege that Page tortiously interfered with the above-listed prospective economic advantages by failing to disclose his financial stake in Sewall and failing to disclose the "bribes" to him. (Prop. Amnd. Compl. ¶¶ 307-12.) As discussed in the section above regarding fraud by failure to disclose, pp. 10-12, *supra*, Plaintiffs must allege specific facts regarding active concealment or a specific relationship with Page imposing upon him a duty to disclose to Plaintiffs. Much like their prior allegations of active concealment, Plaintiffs assert Page actively concealed his alleged financial stake in Sewall by failing to disclose it. (Prop. Amnd. Compl. ¶¶ 81, 165.) For the same reasons discussed in the fraud section, this is not enough. Moreover, Plaintiffs have not alleged any facts to establish a specific relationship with Page that would impose upon him a duty to disclose to Plaintiffs his alleged financial interest in Sewall. Plaintiffs point to two statutes,

14

5 M.R.S. § 18-A and 17 M.R.S. § 3104, but neither of these statutes impose upon Page a duty to disclose such information *to Plaintiffs*. Page may have been required to disclose his alleged financial stake in Sewall to *someone*, but these statutes do not provide a basis for a specific relationship with the Plaintiffs.[10] For these reasons, leave to amend Count II will not be granted as it pertains to Page's alleged tortious interference.

As they did in the complaint for which Judge Levy dismissed most of the state law claims, Plaintiffs again allege two further instances of fraud to support the tortious interference claims. In Count II, Plaintiffs allege the delay CVG purportedly procured in the announcement of the Phase II finalists to buy itself time to buy the mill was fraud because *other* bidders justifiably relied on the failure to disclose this information. (Prop. Amnd. Compl. ¶ 304.) In Count III, Plaintiffs allege that Con Ed Solutions' removal of Relentless from the bid team was itself fraud of the other competing bidders because the competing bidders relied on the team as constructed with Relentless, not CVG. (Prop. Amnd. Compl. ¶ 325.) These are strikingly similar allegations to those addressed by Judge Levy in his September 30, 2019 order. Nothing in the proposed amended complaint remedies the deficiencies identified by Judge Levy, and the Court incorporates and adopts Judge Levy's analysis on these allegations here. *See Old Town Util.*, 2019 U.S. Dist. LEXIS 168043, at *28-29. These two allegations of fraud relate to allegations of fraud the Court already concluded were insufficient. Therefore, leave to amend will not be granted for these aspects of the proposed amended complaint.

Plaintiffs also allege in Count II an instance of tortious interference by way of intimidation

---

[10] Plaintiffs assert, without citation to any authority, that "[f]or Page to have effected fraud-based tortious interference via breach of a duty to disclose, there is no requirement that the breached legal duty be owed *to the Plaintiffs*." (Mot. Leave Amnd. 9.) The Court does not agree, particularly when, "absent a fiduciary or confidential relationship, there is no duty to disclose information." *Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995).

with the prospective economic advantages in OTU's Purchase Agreement with MFGR, OTU's Advisory Agreement with MFGR, and OTU's partnership with the City in developing, purchasing, and financing purchase of the mill. (Prop. Amnd. Compl. ¶ 296.) Though not specifically alleged as a prospective economic advantage in Count II, Plaintiffs also appear to allege the Con Ed Defendants committed tortious interference by way of intimidation with OTU's Operating Agreement. (Prop. Amnd. Compl. ¶ 313.) "Interference by intimidation involves unlawful coercion or extortion." *Rutland*, 2002 ME 98, ¶ 16, 798 A.2d 1104. "Rule 9(b)'s 'particularity' requirement does not apply to the assertion of 'intimidation,' but a complaint must contain some factual allegation on point." *Whatley v. Diversified Corp. Res., Inc.*, No. 99-284-B, 2000 U.S. Dist. LEXIS 8005, at *3 (D. Me. Mar. 28, 2000).

> [I]ntimidation exists wherever a defendant has procured a breach of contract by "making it clear" to the third party with whom the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with the defendant would be to breach the third party's contract with plaintiff.

*Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 35, 150 A.3d 793 (Alexander, J., concurring) (citation omitted).

Other than the conclusory recitation of the elements of a tortious interference claim, the proposed amended complaint only contains one allegation supporting the claim of tortious interference by way of intimidation with Plaintiffs' prospective economic advantages with MFGR and the City:

> The Con Ed Defendants and Sewall . . . procured through intimidation MFGR's breach of the Purchase Agreement (and the Advisory Agreement) and the City's severing of its exclusive relationship with OTU by making it clear to MFGR and the City that the only means by which MFGR and the City could avail themselves of the mill development benefits flowing from the sale of power and steam to the University would be to sever their economic relations

16

> with OTU. MFGR wanted those benefits because they constituted a precondition for financing a purchase at a price that reflected the Facility's going-concern value. The City wanted those benefits because of the economic development, job creation, and tax base expansion benefits mill redevelopment would provide.

(Prop. Amnd. Compl. ¶ 159.) Likewise, there is only one allegation elsewhere in the proposed amended complaint regarding the Con Ed Defendants intimidating Sewall and Edson into breaking the OTU Operating Agreement:

> The Con Ed Defendants . . . procured through intimidation Edson's and Sewall's breach of the OTU Operating Agreement in facilitating CVG's acquisition of the Facility, by making it clear to Edson and Sewall that the only means by which Sewall and Edson could avail themselves of the benefit of working with the Con Ed Defendants would be to breach their contract and fiduciary duty to the Plaintiffs.

(Prop. Amnd. Compl. ¶ 158.) Though both of these acts of intimidation are alleged against the "Con Ed Defendants" as a grouping and all Con Ed parties are named, it is clear from a review of the related paragraphs in the proposed amended complaint that the only Con Ed party that played any role in these alleged acts of intimidation was Con Ed Solutions. Notwithstanding that, the proposed amended complaint does allege two scenarios of intimidation fitting that described by Justice Alexander. Plaintiffs have at least colorably alleged some damages caused by these alleged instances of intimidation. (Prop. Amnd. Compl. ¶¶ 315, 318.) Therefore, the proposed amended complaint sufficiently states a claim of tortious interference of Plaintiffs' prospective economic advantages with MFGR and the City by intimidation against Con Ed Solutions and Sewall, and it sufficiently states a claim of tortious interference of OTU's Operating Agreement by Con Ed Solutions.

In Count III, Plaintiffs allege tortious interference by way of intimidation with the prospective economic advantages of OTU's Teaming Agreement with Con Ed Solutions and membership in the Con Ed Solutions team; OTU's opportunity to sell power and steam to the

17

University and Relentless's relationship with the University as a subcontractor through the Con Ed Solutions bid; and the Plaintiffs' relationship with Sewall, as co-members of OTU and as joint participants in the Con Ed Solutions team. (Prop. Amnd. Compl. ¶ 321.) Though carefully worded, Count III essentially alleges tortious interference of the Teaming Agreement (of which the opportunity to sell power and steam to the University was a goal) and the Operating Agreement (of which the relationship with Sewall was a part). Count III simply refers back to all other allegations of fraud and intimidation elsewhere in the proposed amended complaint. (Prop. Amnd. Compl. ¶ 323.) This aspect of Count III essentially alleges tortious interference by way of tortious interference because only the prior acts of alleged intimidation occurred with other prospective economic advantages that were interfered with.[11]

In other words, based on all of the foregoing analysis in this order, the only potentially viable allegations of fraud or intimidation for this aspect of Count III are: (1) Con Ed Solutions and Sewall's tortious interference through intimidation in Plaintiffs' prospective economic advantage in the potential sale of the mill from MFGR and the relationship with the City to finance that project, and (2) Con Ed Solutions' tortious interference through intimidation in OTU's Operating Agreement.

(1) cannot be viable for a few reasons. First, as it pertains to Con Ed Solutions, the proposed amended complaint essentially alleges that Con Ed Solutions tortiously interfered in the Teaming Agreement (of which it was a party) and the OTU Operating Agreement by tortiously interfering in Plaintiffs' prospective economic advantages with MFGR and the City *and* tortiously

---

[11] As alleged, Defendants tortiously "interfer[ed] with OTU's opportunity to sell power and steam to the University and with Relentless's relationship with the University as a subcontractor through the Con Ed Solutions bid" by "tortious[ly] interfer[ing] with prospective economic advantages" Plaintiffs had in OTU's Purchase Agreement with MFGR, OTU's Advisory Agreement with MFGR, and OTU's partnership with the City in developing, purchasing, and financing purchase of the mill. (Prop. Amnd. Compl. ¶ 323.)

interfering in the OTU Operating Agreement. It is circular to allege that Con Ed Solutions tortiously interfered in the OTU Operating Agreement by tortiously interfering in the OTU Operating Agreement. For the same reason, (2) is not viable in addition to the already asserted claim of tortious interference by intimidation for the same act. Moreover, Con Ed Solutions cannot interfere in an agreement it was a party to (the Teaming Agreement) even if that tortious interference allegedly occurred by tortiously interfering with a different relationship. As Plaintiffs conceded, particular Defendants cannot tortiously interfere in agreements they were parties to. (Reply to Omnibus Opp. re: Mot. Leave Amnd. 22.)

The remainder of (1) alleges tortious interference by Sewall. As constructed in the proposed amended complaint, Sewall allegedly tortiously interfered by way of intimidation with the Teaming Agreement and the Operating Agreement by tortiously interfering by way of intimidation with Plaintiffs' prospective economic advantages with MFGR and the City. Sewall cannot tortiously interfere with a contract it was a party to. (Reply to Omnibus Opp. re: Mot. Leave Amnd. 22.) Additionally, other than the conclusory recitation of the elements of the claim, the proposed amended complaint contains no allegations regarding Sewall's alleged tortious interference by intimidation with the Teaming Agreement entered into by Relentless and Con Ed Solutions. The only specific allegations of intimidation contained in the proposed amended complaint regard Con Ed Solutions and Sewall intimidating MFGR and the City, and Con Ed Solutions intimidating Sewall. (Prop. Amnd. Compl. ¶¶ 158-59.) There are no allegations that Sewall intimidated Con Ed Solutions.

As detailed in this section, leave to amend Count II will be granted only as it pertains to the two specific allegations of intimidation by Con Ed Solutions and Sewall. Leave to amend Count III will not be granted.

19

3. <u>Counts V and VII – Promissory Estoppel against Con Ed Solutions, Bosch, Strosser, Sewall, and Edson</u>

In Count V, Plaintiffs allege that "Bosch, Strosser and Con Ed Solutions promised Relentless and Eakin to give Relentless a compensated role in the Con Ed Solutions RFP team and bid, to support Relentless's and Eakin's efforts to procure purchase of the Facility for OTU, and otherwise to act in accordance with the terms of the Teaming Agreement." (Prop. Amnd. Compl. ¶ 339.) In Count VII, Plaintiffs allege that "Sewall and Edson promised OTU, Relentless and Eakin to approach the opportunity to purchase the Facility and the opportunity to participate in the Con Ed Solutions bid exclusively through OTU, and Edson promised to accept a duty of loyalty to OTU, to abstain from exploiting a business opportunity without first disclosing and offering it to OTU, and to preserve the confidentiality of OTU's proprietary information, in the manner described in the OTU Operating Agreement." (Prop. Amnd. Compl. ¶ 350.)

The Court declines to grant leave to amend for these claims because they fail to state a claim for the same reason Judge Levy dismissed them in the first instance:

> The complaint's allegations concerning the Defendants' promises are conclusory and merely recite the elements of a promissory estoppel claim. The complaint otherwise makes no mention of any promises made by the Defendants beyond their agreement to the terms of the Old Town Utility Operating Agreement and the Teaming Agreement. However, the doctrine of promissory estoppel applies to promises that are otherwise unenforceable, and is invoked to enforce such promises so as to avoid injustice. Thus, the Teaming Agreement and the Old Town Utility Operating Agreement do not provide a foundation for a promissory estoppel claim. The complaint therefore fails to state a claim for promissory estoppel.

*Old Town Util.*, 2019 U.S. Dist. LEXIS 168043, at *38-39 (alterations, citations, and quotation marks omitted). Paragraphs 56 and 72—which Plaintiffs contend remedy the deficiencies found by Judge Levy—do not change the analysis because they still generally stem from the Operating

20

Agreement with Sewall and the Teaming Agreement with Con Ed Solutions. Leave to amend will not be granted for the promissory estoppel counts.

   4. Count IX – Declaratory Relief against Page and Injunctive Relief against the Trustees

In paragraphs 373 and 376 of their proposed third amended complaint, Plaintiffs essentially insist that the Court commandeer the statutory discretion granted to the Trustees under its contracting power by making the Department of Administrative and Financial Services ("DAFS") take over the process. *See* 5 M.R.S. § 1812 (emphasis added) ("The Trustees of the University of Maine System *may* authorize the [DAFS] to act for them in any purchases."). Even assuming the Legislature granted the Plaintiffs a private cause of action to enforce the conflict-of-interest statutes Plaintiffs cite to, and even assuming the Court had any authority to interject itself in this issue—propositions the Court does not agree with considering that such matters are distinctly within the Legislature's purview—Plaintiffs' alleged harm is far too speculative to maintain a claim for injunctive relief.

As the parties are aware, a required showing before obtaining injunctive relief is that a "plaintiff will suffer irreparable injury if the injunction is not granted . . . ." *Ingraham v. Univ. of Me.*, 441 A.2d 691, 693 (Me. 1982). Plaintiffs contend they

> are likely to utilize their skills, expertise and experience to participate in public bid processes in the future. Meanwhile, the Enterprise's key relationships are still operating, and there is a significant danger that the Enterprise's pattern of racketeering activity will continue into the future. Sewall, Treadwell and Con Ed Solutions intend to partner on future energy and infrastructure project bids (a relationship that is only tighter now that Treadwell has purchased Sewall), including public education energy services bids in Maine. . . . Injury to the Plaintiffs and to the public is thus likely to recur if the Court does not award declarative and injunctive relief.

(Prop. Amnd. Compl. ¶¶ 374-75.) Most notably, the linchpin to Plaintiffs' theory regarding the

21

corrupt bidding process—former Chancellor Page—stepped down from his role as chancellor at the end of 2018. (Prop. Amnd. Compl. ¶ 242.) Plaintiffs have not, and cannot, sufficiently allege that they would participate in another bidding and contracting process for which there would be a future conflict of interest on the Trustees' side or that the Trustees would not follow the proper procedures for resolving such a conflict. *Cf. Globe Air, Inc. v. Thurston*, 438 A.2d 884, 888 (Me. 1981) ("There may or may not be such a project in 1982. The plaintiff may or may not bid on such a contract. The defendant may or may not use a similar method of evaluating the bids."); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."). Plaintiffs have alleged nothing but conclusory and speculative allegations about injury in the future. Therefore, leave to amend is not granted regarding the claim against the University Defendants.

As it pertains to the claim for declaratory relief against Page,[12] Plaintiffs simply assert, without citation, that the admittedly unaltered declaratory judgment "claim was revived upon remand." (Mot. Leave Amnd. 10.) They argue that the amendments to the tortious interference claims involving Page change the calculus. They further contend Judge Levy applied a federal standing analysis, but he expressly discussed it in the context of a Maine-specific standing analysis for the declaratory judgment claim and expressly explained it related only to the RICO claims:

> As to declaratory relief, the Defendants argue that certain declarations sought by the Plaintiffs—that the University Defendants violated various criminal and civil provisions—are not justiciable. Because both parties argue that Maine law determines the Plaintiffs' standing to seek declaratory relief, I apply Maine law without deciding the issue. "A plaintiff seeking declaratory relief must present for the court's consideration a justiciable controversy, previously defined by this court as a claim of right buttressed by a

---

[12] "Plaintiffs acknowledge that there are no grounds for reviving the claim for declaratory relief against the Trustees." (Reply to University Def.s' Opp. re: Mot. Leave Amnd. 12.)

> sufficiently substantial interest to warrant judicial protection." *Smith v. Allstate Ins. Co.*, 483 A.2d 344, 346 (Me. 1984). A plaintiff has a sufficiently substantial interest in a declaratory judgment where the declaration would affect her concrete legal interests, such as the outcome of a pending lawsuit in which she is a party. *See id.* at 346-47. Here, the declaration the Plaintiffs request, if granted, would affect only the Plaintiffs' RICO claims (Counts I and II), which I dismiss for the reasons discussed above. Thus, the Plaintiffs do not have a substantial interest in declaratory relief that survives the motion to dismiss.

*Old Town Util.*, 2019 U.S. Dist. LEXIS 168043, at *45-46. Plaintiffs offer no compelling reason for disturbing Judge Levy's analysis that Plaintiffs do not have standing to seek a declaration regarding Page's alleged violations of various civil and criminal statutory provisions, particularly when the proposed amendments to the tortious interference claim against Page do not state a claim. Leave to amend Count IX will not be granted.

5. Individual Defendants and Corporate Defendants against Whom No Tortious Conduct Is Alleged

Plaintiffs seek to maintain claims against various individual Defendants who were employed with various corporate actors, and they also seek to maintain claims against other corporate entities (other than Con Ed Solutions and Sewall).[13] The various individual Defendants named by Plaintiffs are: Ward Strosser (northeast regional sales manager for Con Ed Solutions), Jack Bosch (general manager of Con Ed Solutions), Mark Noyes (president and CEO of Con Ed Clean Energy, Con Ed Solutions, Con Ed Development, and Con Ed Energy), Paul Mapelli (vice president and general counsel of Con Ed Clean Energy, Con Ed Solutions, Con Ed Development, and Con Ed Energy), David Edson (president and CEO of Sewall), Stephen Jones (managing partner, president, and CEO of Treadwell Franklin Infrastructure Capital, LLC), and James Page (in his individual capacity as he is no longer Chancellor of the University of Maine System). The

---

[13] As the Court detailed in footnote 5, *supra*, the allegations are insufficient to allege vicarious liability on the various other Defendants through the purported bribery conspiracy.

various corporate Defendants (other than Con Ed Solutions and Sewall) named by Plaintiffs are: Con Edison Clean Energy Businesses, Inc., Consolidated Edison Solutions, Inc., Consolidated Edison Development, Inc. Consolidated Edison Energy, Inc., and Treadwell Franklin Infrastructure Capital, LLC.

Following the Court's analysis of the claims in the proposed amended complaint, the only named parties for which there are well-pleaded factual allegations alleging tortious conduct for which leave to amend will be granted are Con Ed Solutions and Sewall. The individual Defendants implicated by those two corporate Defendants are Strosser, Bosch, and Edson. Though Plaintiffs continue to argue otherwise, the individual Defendants are clearly named in this suit solely by virtue of their positions with the various corporate Defendants, and there are no allegations that Strosser and Bosch "undertook any individual acts of wrongdoing distinct from those of the LLC." *Town of Leb. v. E. Lebanon Auto Sales LLC*, 2011 ME 78, ¶ 9 n.3, 25 A.3d 950. Therefore, leave to amend is not granted regarding Strosser and Bosch individually.

Edson remains in the suit individually solely on the basis of the unique nature of the duties prescribed by the OTU Operating Agreement. Otherwise, there are no well-pleaded factual allegations to establish that Edson committed any allegedly tortious conduct that was distinct from that of Sewall. The remaining claims and Defendants in the case after leave to amend is granted in accordance with this order are:

- Tortious interference by way of intimidation with Plaintiffs' prospective economic advantages with MFGR and the City against Con Ed Solutions and Sewall;

- Tortious interference by way of intimidating Sewall into breaching OTU's Operating Agreement against Con Ed Solutions;

- Breach of contract (the Teaming Agreement) claim against Con Ed Solutions;

24

- Breach of contract (the OTU Operating Agreement) claim against Sewall and Edson; and

- Breach of fiduciary duty (stemming from the Operating Agreement) claim against Sewall and Edson (Count VIII).

**CONCLUSION**

Plaintiffs' proposed amended complaint largely fails to state claims for relief. Leave to amend is granted regarding the alleged acts of tortious interference through intimidation against Sewall and Con Ed Solutions. Otherwise, the Court denies leave to amend.

The entry is:

1. Plaintiffs' motion for leave to file a third amended complaint is **GRANTED IN PART** and **DENIED IN PART**
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated:  **November 5, 2020**                                                   **/s**

                                                        **Hon. M. Michaela Murphy**
                                                        **Justice, Maine Superior Court**

OLD TOWN UTILITY & TECHNOLOGY PARK, LLC

v.

CONSOLIDATED EDISON SOLUTIONS, INC.

Party Name:                                          Attorney Name:


Samuel Eakin                                         **Benjamin Campo, Esq.**
Old Town Utility & Technology Park                   Douglas McDaniel Campo
Relentless Capital Co, Inc.                          90 Bridge St, Suite 100
                                                     Westbrook, ME 04092


Consolidated Edison Solutions, Inc.                  **Sigmund Schutz, Esq.**
                                                     Preti Flaherty

                              One City Center

                                                     PO Box 9546
                                                     Portland, ME 04112


David Edson                                          **Ilse Teeters Trumpy**
James W Sewall Company                               Taylor McCormack & Frame
                                                     30 Milk St, 5th Floor
                                                     Portland, ME 04101